## J. F. COLLINS v. THE STATE.

### No. 1414. Decided June 15, 1898.

**1. Receiving Stolen Cattle—Charge.**

Where defendant was convicted of receiving the stolen cattle, and the charge given by the court had instructed the jury on the doctrine of principals with reference to the theft, and that they should acquit defendant unless they believed beyond a reasonable doubt that he was present and participated in the fraudulent taking; and also to acquit if they believed from the evidence that defendant received

the cattle from one C. in good faith, without knowing they had been stolen, or if they had a reasonable doubt of that fact. Held, this was sufficient to authorize an acquittal if the jury believed that defendant had purchased the cattle in good faith from C., and the court did not commit an error in refusing defendant's special instructions with regard to defendant's purchase from C. in good faith.

**2. Same—Alibi—Impeaching Credibility of Witness—Fabrication of Testimony.**

On the first trial of defendant two witnesses were present and heard the accomplice, who had turned State's evidence, testify that he and defendant had stolen the cattle; they were not then put upon the stand by the defendant to testify as to an alibi. On the second trial they were used by defendant to prove an alibi. Held, it was competent for the State to show by them that they did not testify as to the alibi on the first trial, it being very suggestive of the subsequent fabrication of their testimony in this regard; and was matter affecting and bearing upon the credit of the witnesses, and to which purpose it was properly limited by the court.

**3. Same—Evidence—Butcher's Book—Entries, Erasures, and Interlineations In—Expert Evidence.**

On a trial for theft of cattle, where defendant, to prove an alibi, had introduced a witness who swore to facts establishing the alibi, and stated that he fixed the day by entries in his books. Held, competent for the State to have said books brought into court for use on the cross-examination of the witness, and then to show by expert testimony that erasures and interlineations had been made in the books to change the original dates and amounts, and thereby discredit and impeach the witness as to the alibi; and there being other testimony tending also to show that defendant was privy to such erasures and interlineations, it was proper for the court to submit this issue to the jury as was done.

**4. Defendant as Witness—Impeachment by Testimony Given on a Former Trial.**

Where a defendant has become a witness in his own behalf, he is to be treated as any other witness, and his testimony then given can be used against him in any subsequent trial. The rule as to unwarned confessions made while in arrest does not apply in such case. Distinguishing Morales v. State, 36 Texas Criminal Reports, 234, and Wright v. State, 36 Texas Criminal Reports, 427.

**5. Charge—The Jury Are the Exclusive Judges, etc.—Weight of Evidence.**

A charge to the jury in the language of the statute that they are the exclusive judges of the facts proved and of the weight to be given to the testimony, etc. (Code of Criminal Procedure, article 766), is sufficient, and it can rarely be of any benefit for the judge to try to explain a matter which is so plain, and attempts at explanation in this regard frequently leads but to confusion. Where the court, after giving the statutory language, substantially added, "In other words, what witnesses you will believe and how much of the testimony you will believe, is left by the law entirely to your minds and consciences," Held, while it is new and original, it is not on the weight of evidence.

APPEAL from the District Court of Grayson. Tried below before Hon. Don A. Bliss.

Appeal from a conviction for knowingly receiving stolen cattle; penalty, two years imprisonment in the penitentiary.

On the 15th day of April, 1897, the grand jury of Grayson County presented an indictment against defendant, charging him with the theft of seven cattle from Frank Sperry, on the 7th day of December, 1896. Defendant was first tried under said charge on the 17th of June, 1897, and the jury failed to agree, and on the 5th of July he was again tried and was then convicted. On the 12th of July, 1897, the conviction of theft of cattle was set aside and a new trial granted. On the 1st day of October, 1897, the grand jury of Grayson County presented indict-

ment against the defendant with two counts, one charging defendant with the 'theft of seven cattle from Frank Sperry on the 7th day of December, 1896, and the other count charging defendant with receiving seven head of cattle from one Abe Crow on the 7th of December, 1896, said cattle alleged to be the property of Frank Sperry, and that same were stolen by Abe Crow and received by defendant, knowing same to have been so acquired.

The first indictment charging theft of cattle was then dismissed, and defendant tried under the second indictment on the 5th of February, 1898, which trial resulted in a conviction of defendant of receiving stolen cattle, etc., and his penalty assessed at two years in the penitentiary.

Abe Crow was also charged by indictment with the theft of these cattle, and was used as a witness by the State on the first and last trials, but did not testify on the second trial.

*Maxey & Vowell,* for appellant.—The court erred in refusing to give defendant's special charge number 2, as follows, to wit: "If you believe from the evidence that defendant purchased the cattle mentioned in the indictment in good faith from one Abe Crow, or if from the evidence you have a reasonable doubt that he so purchased said cattle, you will give the defendant the benefit of such doubt and find him not guilty."

A defendant is entitled to a distinct and affirmative and not merely a negative presentation of the issues made by the evidence, and in a trial for theft, when there is evidence tending to prove a purchase, it is incumbent on the court to submit that issue in his charge. The defense presented by testimony of the defendant himself, and also by the testimony of one T. J. Williams, was purchase of the cattle from Abe Crow. The court nowhere in its general charge presents the issue or defense of purchase. Reynolds v. State, 8 Texas Crim. Apps., 413; Heath v. State, 7 Texas Crim. Apps., 464; McDaniel v. State, 24 Texas Crim. Apps., 552; Beckham v. State, 8 Texas Crim. Apps., 52.

The court erred in admitting the testimony of the witnesses Jim Greening and Lem Moton, to the effect that on the first trial of defendant they heard Abe Crow testify that he (Crow) and the defendant stole the cattle.

The testimony was admitted by the court as bearing upon the credibility of the witnesses Greening and Moton. The court stated to the jury verbally, and also in his written charge, that such testimony might be considered by them in determining the credibility of these witnesses. Such method of discrediting a witness is too absurd to require citation of authorities as to the methods prescribed by law for the impeachment of witnesses. The admission of this testimony, with the verbal statement of the court to the jury, and his written charge that same was admitted as bearing upon the credibility of these witnesses, was equivalent to saying that a witness who heard Abe Crow testify on the first trial, and did not himself testify on the first trial, but did testify on this trial, was un-

worthy of credit; for the reason that it was stated from the witness stand by both Moton and Greening, in the presence and hearing of the jury, that they heard a part of Abe Crow's testimony on the first trial, and that they did not testify on the first trial; and we contend that under these circumstances the court had as well said to the jury, these men are not worthy of credit, as to admit this testimony, and state that it was admitted as bearing upon the credibility of these witnesses.

The court erred in the eighth paragraph of his charge to the jury, as follows, to wit: "The law makes you the exclusive judges of the facts proved, of the weight of the testimony, and of the credibility of the witnesses. In other words, what witnesses you will believe, and how much of their testimony you will believe, is left by the law entirely to your minds and consciences."

The jury should not be further instructed than to give the statute, and a charge which allows the jury arbitrarily to believe or disbelieve any witness is erroneous. Leverett v. State, 3 Texas Crim. Apps., 213; Litman v. State, 9 Texas Crim. Apps., 461; Jackson v. State, 7 Texas Crim. Apps., 363; Pharr v. State, 7 Texas Crim. Apps., 473; Johnson v. State, 9 Texas Crim. Apps., 558; Stockholm v. State, 24 Texas Crim. Apps., 602.

The court erred in permitting State's counsel, on cross-examination of defendant in reference to statements made by defendant when on the witness stand at the first trial of the case, and in requiring defendant, over objection by his counsel, to testify in reference to such statements.

When on the trial of a case the defendant becomes a witness in his own behalf, it is not competent for the State on cross-examination to draw out statements or declarations made by him while under arrest or in custody for any purpose, unless he made such statements after being warned. The defendant was in custody when the statements were made by him as a witness on the first trial of the case. It was not shown that he had ever been warned. Morales v. State, 36 Texas Crim. Rep., 234; Wright v. State, 36 Texas Crim. Rep., 427; Code Crim. Proc., art. 790.

The court erred in admitting over defendant's objection the entries in the books of the witness Lem Moton, because same were irrelevant and immaterial and hearsay as to defendant.

The witness Moton was introduced by the defendant, and did not testify on direct examination as to any entries in the books, but over the objection of the defendant did testify on his cross-examination as to such entries. The court admitted the entries as bearing upon the credibility of the witness Moton.

The court erred in admitting the testimony of Ike Smith, as an expert, to the effect that there had been certain changes and erasures made in the books of the witness Moton.

The entries in the books were introduced by the State over defendant's objection. To permit the State to introduce the books and the evidence as to changes in the entries for the purpose of discrediting the testimony of the witness Moton was a novel and entirely new way of impeaching a

witness; it was prejudicial to the rights of the defendant, in this: it gave to the State a plan of bolstering up the contention that the defendant had, with the aid of Moton, manufactured a lot of testimony for his defense.

The court erred in charging the jury as follows: "But if you should believe from the evidence that any of the said entries on the books of the said witness Moton was or were made or changed at the instance of the defendant, then you can consider such entry or entries so made or changed for all purposes."

There was no evidence to warrant such charge. All the evidence on the question as to who made the entries in the books was the testimony of the witness Lem Moton, and he testified that he made them all.

*W. W. Walling* and *Mann Trice*, Assistant Attorney-General, for the State.

HENDERSON, JUDGE.—The indictment against appellant contains two counts—the first for theft of seven head of cattle from Frank Sperry, and the second count charging him with receiving the property from Abe Crow. Appellant was convicted under the second count. By the testimony it is disclosed that the Sperry cattle were taken late in the evening or early part of the night of the 7th of December, 1896. They were sold by the defendant the following day, in the city of Denison, about twenty miles from Sperry's pasture. The State introduced proof tending to establish both counts, and the defendant relied on alibi as to the first count, and a purchase from Abe Crow as to the second. Abe Crow testified that he and appellant committed the theft; that he drove the cattle to Denison, and defendant sold them, the proceeds being divided between them.

Appellant insists that the court committed an error in refusing to give defendant's special charge number 2, as follows: "If you believe from the evidence that the defendant purchased the cattle mentioned in the indictment, in good faith, from one Abe Crow, or if from the evidence you have a reasonable doubt that he so purchased said cattle, you will give the defendant the benefit of such doubt, and find him not guilty." In treating of this charge, it will merely be necessary to discuss the question as applied to the conviction on the second count, of receiving stolen property. The court refused the charge above indicated, but we believe, in lieu thereof, gave a charge which covered the same ground, and properly guarded appellant's rights in the premises. The charges of the court covering that subject were as follows: The court instructed the jury on the doctrine of principals with reference to theft, and, unless they believed, beyond a reasonable doubt, that appellant was present and participated in the fraudulent taking, to acquit him of said charge. And the court further instructed the jury, with reference to the second count, that, if they believed from the evidence that the defendant received said cattle from said Crow in good faith, without knowing that

the same had been stolen, or "if the evidence leaves in your minds a reasonable doubt that he received the same knowing at the time that they were stolen, you can not find the defendant guilty of receiving stolen cattle, knowing that the same were stolen." The above charge was unquestionably intended to respond to appellant's proof of purchase of said cattle from Abe Crow. This was the only method of receiving said cattle set up by him. If this receiving by purchase was in good faith, as stated by the court, it was a complete answer to the charge.

Appellant, by his third assignment, questions the admission of the testimony of Jim Greening and Lem Moton on cross-examination by the State, to the effect that, on the first trial of the defendant, they heard Abe Crow testify that he (Crow) and the defendant stole the cattle. This testimony was admitted by the court as bearing on the credit of the witnesses Greening and Moton, and the court so limited the effect of said testimony in his charge. It is contended by counsel that this method of discrediting or impeaching a witness is unknown to the law. Evidently, the object of the introduction of this testimony was to show that appellant at a former trial had the witnesses Moton and Greening then present, and, if their testimony was then true, it would have been very valuable to him, as proving an alibi as against the first count, for theft of said cattle, and the fact that they were not used at that time would be very suggestive of a subsequent fabrication of their testimony, and we think, as presented in the bill of exceptions, could have been used for that purpose. Said testimony could not have affected appellant injuriously as to the second count, because the testimony of these witnesses was relevant simply to the first count of the indictment.

Appellant urges that the court erred in admitting the entries in the books of the witness Lem Moton, because same were irrelevant, immaterial, and hearsay as to the defendant. In this connection it is also insisted that it was incompetent for the State, having introduced the books, to show erasures and interlineations in the entries, and then to show, by expert testimony, that erasures and interlineations had been made in the books so as to change the original dates and amounts. The record shows that this witness Moton was introduced by the defendant to show that late on the evening of the alleged theft, which was committed about twenty miles from his butcher shop at Denison, he bought two head of cattle from appellant. In the course of this examination he stated that he knew these facts and the date of the purchase from entries made in said book at the time, and that was the way he fixed the day. His testimony was used primarily to establish an alibi. The books were referred to by him for the purpose of corroborating and sustaining his statement. Now, they having been referred to by the witness Moton, it was competent for the State then to have said books brought into the case, and use them and the entries in connection with said witness' testimony in the cross-examination of said witness. And we further hold that, if the entries in that connection showed erasures and interlineations, it was competent to go into an investigation thereof as affecting the date of pur-

chase as stated by the witness. We think the court very properly in his charge confined this testimony with reference to the erasures and interlineations in the book of entries, in connection with the date of the transaction, for the purpose of discrediting and impeaching the witness Moton. The court, however, went further than this in his charge, and instructed the jury that if they found from the testimony that the entries in connection with the date had been changed, interlined, or erased, and they further believed that appellant had any connection therewith, they could consider such testimony for all legitimate purposes in the case. Appellant, in this connection, insists that there was no testimony in the least connecting appellant with any interlineation or change in said entries. The court, however, in his explanation to the bill of exceptions, suggests certain portions of the testimony as tending to show that appellant was privy to such erasures or interlineations, and we think that there was enough testimony relevant to that issue to authorize its submission to the jury.

It is contended that the court should not have permitted the cross-examination of the defendant in reference to statements made by him when on the witness stand on the first trial of the case. The ground of this objection is stated to be that appellant was then a prisoner, and before giving in his testimony had not been warned or cautioned under the statute. In support of this proposition, we are referred to the cases of Morales v. State, 36 Texas Criminal Reports, 234, and Wright v. State, 36 Texas Criminal Reports, 427. These cases are not in point. We held in said cases, where a defendant was under arrest, and made confessions or statements which might be used in the nature of confessions, they could not be used against him on the trial, even for the purpose of impeachment, unless he had been warned before making the same. In this case appellant had voluntarily taken the stand as a witness in his own behalf, and had testified fully in regard to the entire case. He was asked in regard to this matter on this trial for the purpose of showing a difference in his testimony then and now. It is contended here that, although he voluntarily took the stand, such testimony could not be used adversely to him, unless he had been warned before making the same, although he was a witness in his own behalf. If this contention is right, then the statements so made could not be used by the jury that tried the first case, because he had not been warned. If the failure to warn could be used to prevent his testimony at a former trial from being used at a subsequent trial, then the same reason would preclude its use at the first trial. The authorities from other States support this view—that is, they go to the extent of holding that, where a defendant testifies on his own behalf, he will be regarded as having freely and voluntarily testified—but we are not aware that any other State has a statute similar to our own. See 6 Am. and Eng. Enc. of Law, 2 ed., p. 567, and note 2, for collated authorities; and 49 La. Ann., 353. The views here expressed do not at all conflict with the rule laid down in the Morales Case, supra. There it was proposed to use against appellant, who took the stand on his own be-

half, confessions of guilt made by him to the sheriff, while he was in jail, and, on his denial that he made such confessions, it was then permitted to impeach him by the sheriff. Clearly, such testimony is inhibited by the very language of the statute. But we do hold here that, a defendant having taken the stand in his own behalf, it is presumed that he does so after having advised with his counsel, and after full knowledge that he can become a witness on his own behalf; and that when he does so he is to be treated, while on the stand, as any other witness, and his testimony so given can be used against him at any subsequent trial. If this were not so, he would testify under a ban, and not with that freedom which the law seems to apprehend. Any other rule would disparage his testimony, and would tend to impair its weight with the jury.

Appellant objected to the following charge of the court: "The law makes you the exclusive judges of the evidence proved, of the weight of the testimony, and of the credibility of the witnesses. In other words, what witnesses you will believe, and how much of their testimony you will believe, is left by the law entirely to your minds and consciences." It is urged by appellant that this charge is upon the weight of the testimony, in that it tells the jury that they can arbitrarily regard or disregard the testimony of any witness or witnesses. It has been frequently held by this court that the trial judge should content himself with charging upon such matters as these in the language of the statute, and not endeavor to add thereto. It can rarely be of any benefit to try to explain a matter which is already plain, and frequently leads to confusion. But that portion of the above charge which is added to the statute on the subject, while it is new and original, does not appear to us to be subject to the criticism of counsel. It furnished no rule or standard by which the jury were to weigh or measure the testimony, but left the matter entirely to their minds and consciences. This was not upon the weight of the testimony, nor did it authorize the jury to act arbitrarily in passing on the credit of the witnesses, nor erect for them a false standard by which to be governed. The additional charge was unnecessary, but it was not error. The judgment is affirmed.

*Affirmed.*

[NOTE.—Appellant's motion for rehearing was overruled without a written opinion.—Reporter.]