Francis Van Eldon BALLEW, Appellant,

v.

The STATE of Texas, Appellee.

No. 59663.

Court of Criminal Appeals of Texas, Panel No. 3.

Dec. 17, 1980.

On Rehearing Oct. 27, 1982.

Lawrence B. Mitchell, Dallas, for appellant.

Henry Wade, Dist. Atty., Steve Wilensky and Hugh Lucas, Jr., Asst. Dist. Atty., Dallas, Robert Huttash, State's Atty., Austin, for the State.

Before ROBERTS, ODOM and PHILLIPS, JJ.

## OPINION

PHILLIPS, Judge.

This is an appeal from a conviction of murder. Punishment was assessed at life imprisonment.

Appellant contends that the court erred in allowing discovery of notes made by appellant's expert witness. Appellant also sets forth several grounds of error complaining of the prosecutor's improper examination of witnesses and argument to the jury. The sufficiency of the evidence is not disputed.

Appellant contends that his attorney-client privilege was violated when the trial court allowed the prosecutor to examine the notes of appellant's expert psychiatric witness, Dr. David R. Baker. The record reflects that appellant hired Dr. Baker to aid in preparation of a sanity defense. At trial, Dr. Baker testified that he examined appellant several times over a two-month period preceding the trial. Dr. Baker's opinion was that appellant was insane at the time of the offense. Before commencing cross-examination, the prosecutor requested and the court ordered Dr. Baker to turn over reports and notes he took during his examinations of appellant. Appellant's objection that the notes were protected under the attorney-client privilege was overruled. The prosecutor then utilized the reports and notes to impeach Dr. Baker's testimony and opinion.

The question presented to us today is one of first impression: In a criminal proceeding, can the state discover and utilize reports and notes of a defendant's expert psychiatric witness?

In Texas the attorney-client privilege is statutorily embodied as Article 38.10, V.A.C.C.P. This provision represents a codification of the deeply-rooted common law rule. It serves as a rule of evidence that bars disclosure, without the consent of the client, of communications that pass in confidence between the client and his attorney during the course of professional employment. See *Brasfield v. State,* 600 S.W.2d 288 (Tex.Crim.App.1980); *Russell v. State,* 598 S.W.2d 238 (Tex.Crim.App.1980).

Given the complexities of our modern society, lawyers often cannot represent their clients effectively without nonlegal assistance. As a result, it has become generally accepted that the scope of the attorney-client privilege encompasses agents whose services are required by the attorney in order to properly prepare his client's

case. E.g., *United States v. Alvarez,* 519 F.2d 1036 (3rd Cir.1975) (psychiatrist); *United States v. Kovel,* 296 F.2d 918 (2nd Cir.1961) (accountant); *United States v. White,* 617 F.2d 1131 (5th Cir.1980) (psychiatrist). 8 Wigmore, Evidence § 2301 (McNaughton rev. 1961).

Numerous states have extended the attorney-client privilege to include psychiatrists hired by the defense attorney to aid in the preparation of a sanity defense. See e.g. *Pouncy v. State,* 353 So.2d 640 (Fla. App.1977); *Houston v. State,* 602 P.2d 784 (Alaska 1979); *State v. Pratt,* 398 A.2d 421 (Md.App.1979); *People v. Sorna,* 276 N.W.2d 892 (Mich.App.1979); *People v. Lines,* 13 Cal.3d 500, 119 Cal.Rptr. 225, 531 P.2d 793 (1975).

As aptly stated in *United States v. Taylor,* 437 F.2d 371, 377 n. 9 (4th Cir.1971):

The assistance of a psychiatrist is crucial in a number of respects to an effective insanity defense. In the first place, the presence or absence of psychiatric testimony is critical to presentation of the defense at trial. "In practical terms, a successful defense without expert testimony will be made only in cases so extreme, or so compelling in sympathy for the defendant, that the prosecutor is unlikely to bring them at all." Goldstein, The Insanity Defense, 124–125 (1967).

Moreover the use of an expert for other, non-testimonial, functions can be equally important. Consultation with counsel attunes the lay attorney to unfamiliar but central medical concepts and enables him, as an initial matter, to assess the soundness and advisability of offering the defense. The aid of a psychiatrist informs and guides the presentation of the defense, and perhaps most importantly, it permits a lawyer inexpert in the science of psychiatry to probe intelligently the foundations of adverse testimony.

"If an accused is to raise an effective insanity defense, it is clear that he will need the psychiatrist as a witness. He will need his aid in determining the kinds of testimony to be elicited, the specialists to be consulted, and the areas to be explored on cross-examination of opposing psychiatrists." (citations omitted)

In light of the foregoing, we hold that the attorney-client privilege extended to Dr. Baker's testimony and his notes and reports from the examinations. However, the privilege is not absolute, and may be waived. *Cruz v. State,* 586 S.W.2d 861 (Tex.Crim.App.1979). We now determine whether appellant waived the attorney-client privilege by calling his psychiatrist to the stand.

States generally have held that the privilege is waived when the defendant calls his psychiatrist to the stand. See e.g. *Pouncy v. State,* supra; *State v. Tensley,* 249 N.W.2d 659 (Iowa 1977); *People v. Newbury,* 290 N.E.2d 592 (Ill.1972); *State v. Gregory,* 488 P.2d 757 (Wash.1971); *Tarrants v. State,* 236 So.2d 360 (Miss.1970); *People v. Whitmore,* 251 Cal.App.2d 359, 59 Cal.Rptr. 411 (1967); see also *State ex rel. Juv. Dept. for Lane County v. Brown,* 528 P.2d 569 (Or.App.1974); *United States v. Alvarez,* supra; compare *Houston v. State,* supra.

In the case before us, appellant called his private psychiatrist, Dr. Baker, to the stand. Dr. Baker testified in detail concerning his examinations of appellant. The notes and reports taken during the examinations were material to the issue of appellant's sanity. Following the wisdom of our sister states, we hold that appellant waived his attorney-client privilege, as extended to the psychiatrist, when he put Dr. Baker on the stand. No error is shown.

In several other grounds of error, appellant challenges the authority of the prosecutor to discover Dr. Baker's medical reports and notes. Appellant contends that no predicate for discovery was established pursuant to the "use before the jury" rule, the "Gaskin" rule, or the "recollection refreshed" rule. Having decided that once Dr. Baker took the stand his reports were no longer privileged and were discoverable, we need not consider these contentions. The grounds of error are overruled.

Appellant next contends that he was deprived of a fair trial because the prosecutor improperly revealed statements made by appellant to Dr. Baker during the sanity examinations. At trial, Dr. Baker testified that appellant was insane at the time of the offense. The prosecutor requested and was allowed to review Dr. Baker's notes. During cross-examination, the prosecutor made repeated reference to statements made by appellant to Dr. Baker during the private examinations. Appellant objected that use of the statements to Dr. Baker violated Article 46.02(3)(g), V.A.C.C.P.[1] The objection was overruled.

■ Prior to trial appellant had been found competent to stand trial. At trial the issue before the jury was appellant's sanity. In *DeRusse v. State,* 579 S.W.2d 224, 230 (Tex.Crim.App.1979), it was held that Article 46.02(3)(g), supra, does not prohibit "the trial use, relative to the sanity defense, of the defendant's statements to the psychiatrist during a combined competency/sanity examination." Dr. Baker examined appellant subsequent to the competency hearing. Dr. Baker's testimony was presented only in regard to appellant's sanity at the time of the offense. No violation of Article 46.02(3)(g), supra, is shown. See also *Riles v. State,* 595 S.W.2d 858 (Tex. Crim.App.1980). The ground of error is overruled.

■ Appellant next complains of improper jury argument by the prosecutor. During the guilt-innocence stage of the trial, the prosecutor argued:

Then we brought you Dr. John Holbrook. Now, a few things about Dr. Holbrook that I think are important. Dr. Holbrook was appointed by a Judge, by Judge John Mead because of his experience.

Appellant's objection was sustained and the jury was instructed to disregard. Appellant's motion for mistrial was overruled.

Any error in the prosecutor's comment was cured by the court's action in sustaining the objection and giving the instruction to disregard. Compare *Johnson v. State,* 510 S.W.2d 944 (Tex.Crim.App.1974). The ground of error is overruled.

In two grounds of error, appellant again complains of improper jury argument by the prosecutor. The first alleged error occurred when the prosecutor stated:

And I was asking Dr. Baker—I was saying, "Can you give me an example of a psychotic episode?" I don't know if he ever did give me an example of the psychotic episode.

MR. MITCHELL: Your Honor, I object. That's a misstatement of the evidence. I believe the doctor said, "Look at the tape of Van Ballew."

Following the court's overruling of appellant's objection, the prosecutor elaborated on his previous comment:

MR. TOKOLY: I'll come to that, also. Then I got around to asking him, I said, "Doctor, did you observe any psychotic episodes?"

   \*     \*     \*     \*     \*     \*

And his answer was, "No, not except my interpretation of the video tapes."

Now let's stop right there. He observed no psychotic episodes, therefore, in any of his four interviews, according to the emphatic testimony of Dr. Baker. And the only psychotic episodes that he interprets is in the video tapes. And here's the point. And here's the crux of the matter. He saw the video tapes after he made his diagnosis of borderline syndrome. Not before.

The other argument that appellant asserts was improper involved the prosecutor's reference to a state's witness:

First of all, we brought you witnesses who saw the Defendant before the offense. They saw the Defendant after the offense. Some of the witnesses saw the Defendant during the period of time cov-

---

1. Article 46.02(3)(g), V.A.C.C.P., provides:

No statement made by the defendant during the examination or hearing on his competency to stand trial may be admitted in evidence against defendant on the issue of guilt in any criminal proceeding.

ered by the video tapes. Now, Glenda Storey is his secretary. She didn't really want to talk to me when I contacted her. I finally got her subpoenaed before the Grand Jury. The reason was I wanted her testimony. I felt that a person who had been a secretary for someone a long period of time—

Appellant's objection that the prosecutor was testifying was overruled.

■■■ Generally, an argument will not constitute reversible error unless, in light of the record as a whole, the language complained of is manifestly improper, harmful, and prejudicial. *Simpkins v. State,* 590 S.W.2d 129 (Tex.Crim.App.1979); *Kerns v. State,* 550 S.W.2d 91 (Tex.Crim.App.1977). After reviewing the record, we find that the prosecutor's errors, if any, were not so harmful as to require a reversal. The grounds of error are overruled.

■■■ Appellant next contends the trial court erred in overruling his objection to a question propounded by the prosecutor. The prosecutor called Garland police officer Arlen Boyd to the stand. The prosecutor attempted to show that appellant, a criminal defense attorney, was intentionally imitating a psychotic episode in front of videotape machinery in the "book-in" room of the Garland City Jail. The prosecutor asked Boyd:

Q. Okay. Now, do you have knowledge as to whether or not a defense attorney, criminal defense attorney, would have access to that area [where the videotape machinery is located] as far as clients that he is representing or (sic) concerned?

MR. HENDLEY: Your Honor, we object as to whether or not criminal defense attorneys in general. We would like for him to ask about that particular lawyer here.

Appellant's objection was overruled. Two questions later the prosecutor asked Boyd if appellant had previous access to the "book-in" room.

The state's theory, which was supported by evidence adduced at trial, was that appellant feigned mental illness. The ques-

tions were relevant to develop the state's theory. The ground of error is overruled.

The judgment is affirmed.

### APPELLANT'S MOTION FOR REHEARING

TOM G. DAVIS, Judge.

On original submission, a panel of this Court held that the trial court was not in error when it allowed the prosecutor to examine the notes of appellant's expert psychiatric witness, Dr. David R. Baker.

Dr. Baker was hired by appellant to aid in the preparation of a sanity defense. He examined appellant several times over a two month period prior to trial. Baker made notes during such examination. At trial, Baker testified that in his opinion, appellant was insane at the time of the offense. On cross-examination, the prosecutor asked Dr. Baker the following questions:

"Q. Doctor, you have said that you do have notes that you have taken down in connection with your examination. Is that correct?

"A. Yes. I took notes on all the four occasions that I visited with Mr. Ballew.

"Q. All right. And you do have those notes present with you now. Do you not?

"A. Yes, I do.

"Q. All right. And I take it you have refreshed your memory from those notes prior to your testifying here today? Have you not?

"A. Yes."

The court ordered Dr. Baker to provide his notes to the prosecutor. Such notes were then used extensively for purposes of cross-examination.

■■■ The instant cause does not involve the "Gaskin Rule" because Dr. Baker was called as a witness by appellant. See *Bizzarri v. State,* 492 S.W.2d 944 (Tex.Cr. App.). Therefore, the State was not entitled to the notes under the holding in *Gaskin v. State,* 172 Tex.Cr.R. 7, 353 S.W.2d

467. Further, the State was not entitled to the notes under the "use before jury rule." Under such rule, which applies to any witness, a party is entitled to inspect, upon timely request, any document, instrument or statement which has been used by the other party before the jury in such a way that its contents become an issue. See *White v. State,* 478 S.W.2d 506 (Tex.Cr. App.); *Collins v. State,* 39 Tex.Cr.R. 441, 46 S.W. 933.[1] In the instant cause, the notes were not used by appellant before the jury during the course of Baker's direct examination.

The right to demand inspection of notes used by a witness to refresh his memory has been limited by us to writings used by the witness on the stand. Such limitation has been criticized by text writers and courts of other jurisdictions. In 1 R. Ray, Texas Evidence, 3rd ed., Sec. 553, pp. 524–526, it is written:

"The writing which is used to refresh the recollection of the witness must on demand be shown to the opponent for his inspection and use on cross-examination so that he may have an opportunity to test the credibility of the witness and see if it could properly or does refresh his recollection. This right to demand inspection has usually been limited by the Texas Courts as well as those of other states to writings used by the witness on the stand. This seems strange since the reasons appear equally applicable to writings used by the witness to refresh his memory before he testifies. Newer cases in other jurisdictions have so extended the right, and that is now the rule in the federal courts...."[2]

The Illinois Supreme Court, in *People v. Scott,* 29 Ill.2d 97, 193 N.E.2d 814 (1963), determined that a witness' notes, which are used to refresh memory, must be tendered to the opposing counsel even though they are reviewed prior to taking the witness stand. In *Scott* the witness did not review any memoranda while on the stand or in the courtroom, rather, the police officer who was testifying refreshed his recollection by reading his superior's police report the preceding day. The *Scott* court said:

"Had reference been made by the officer to the captain's report during his testimony for purposes of refreshing his recollection, we assume no question could be raised as to the necessity for its exhibition to defense counsel for his examination and use during cross-examination. We see no substantial or logical difference between that situation, and the one where the witness examine[d] the refreshing document prior to stepping into the courtroom. The opportunity for mischief or error is equally present regard-

"an adverse party is entitled to have the writing produced at the hearing, to inspect it, to cross-examine the witness thereon, and to introduce in evidence those portions which relate to the testimony of the witness. If it is claimed that the writing contains matters not related to the subject matter of the testimony the court shall examine the writing in camera, excise any portions not so related, and order delivery of the remainder to the party entitled thereto. Any portion withheld over objections shall be preserved and made available to the appellate court in the event of an appeal...."

The California Code of Evidence since 1967 has mandated that "if a witness, either while testifying or prior thereto, uses a writing to refresh his memory with respect to any matter about which he testifies, such writing must be produced at the hearing at the request of an adverse party." Cal. Evidence Code Sec. 771 (West). See also *People v. Silberstein,* 159 Cal.App.2d Supp. 848, 323 P.2d 591 (1958).

---

1. See also *Jackson v. State,* 166 Tex.Cr.R. 348, 314 S.W.2d 97; *Palacio v. State,* 164 Tex.Cr.R. 460, 301 S.W.2d 166. Under such circumstances, the "use before the jury rule" is applicable with regard to access by the opposing party to the document. *Sewell v. State,* 367 S.W.2d 349 (Tex.Cr.App.).

2. Federal Rules of Evidence, Rule 612, 28 U.S. C.A., governs the circumstances under which an adverse party is entitled to inspect and use for cross-examination a writing which a witness uses in order to refresh his present recollection. That rule provides in part:

"Except as otherwise provided in criminal proceedings by section 3500 of title 18, United States Code, if a witness uses a writing to refresh his memory for the purpose of testifying, either—
  "(1) while testifying, or
  "(2) before testifying, if the court in its discretion determines it is necessary in the interests of justice,

less of where or when the inspection of the document occurs. As Wigmore states: 'For though there is no objection to a memory being thus stimulated, yet the risk of imposition and the need of safeguard is just as great.' (3 Wigmore on Evidence, 3rd ed. sec. 762, p. 111)." Id. at 821.

Likewise, in *Commonwealth v. Marsh,* 354 Mass. 713, 242 N.E.2d 545 (1968), the Massachusetts Supreme Court stated: .

"It is an artificial distinction to allow inspection of notes used on the stand to refresh recollection and to decline it where the witness inspects his notes just before being called to the stand." Id. 242 N.E.2d at 551.

Other jurisdictions have arrived at a similar conclusion when considering the right of access to a writing used by a witness to refresh his recollection prior to the time that the witness took the stand. See e.g. *Z. v. Superior Court of Los Angeles,* 3 Cal.3d 797, 91 Cal.Rptr. 594, 478 P.2d 26 (1970); *People v. Estrada,* 54 Cal.2d 713, 7 Cal.Rptr. 897, 355 P.2d 641 (1960); *People v. Olson,* 59 Ill.App.3d 643, 16 Ill.Dec. 660, 375 N.E.2d 533 (1978).

The fact that other jurisdictions and textbook writers have criticized a rule we have embraced does not, standing alone, furnish reason for abandonment of such rule. However, if precedent does not have some sort of reasonable underpinning, we should not bury our heads in the sand when such criticism is voiced.

While the notes in the present case were not used by Dr. Baker before the jury, their contents became an issue after the witness stated that he had referred to such notes before testifying in order to refresh his present recollection. Testimony showing Baker's act in referring to the notes was the functional equivalent of Baker having actually referred to his notes in the presence of the jury for the purpose of refreshing his present recollection. It was then permissible for the State to inspect the notes in order to test the credibility of Baker and determine if the notes could properly or did refresh his recollection.

There was no error in the court allowing the State to obtain Dr. Baker's notes for purposes of cross-examination after he testified that he had refreshed his memory from such notes prior to testifying.

The appellant's motion for rehearing is overruled.

ONION, P.J., dissents.

DALLY, J., concurs in results.

## APPELLANT'S MOTION FOR REHEARING

ROBERTS, Judge, concurring.

I join Judge Tom Davis's opinion that the State was entitled to inspect the memorandum from which the appellant's witness had refreshed his recollection. Therefore, there is no need to consider the applicability of the Gaskin rule to defense witnesses.

For that reason, and because I think it involves a misreading of the case, I do not join Judge Tom Davis's opinion when it says:

"The instant case does not involve the 'Gaskin Rule' because Dr. Baker was called as a witness by the appellant. See *Bizzarri v. State,* 492 S.W.2d 944."

*Bizzarri* should not be read to say that the Gaskin rule does not apply to a witness called by the defendant. *Bizzarri* did happen to involve a defendant's witness, but the Gaskin rule was not inapplicable for that reason.

It was inapplicable because the defendant in *Bizzarri* was seeking Gaskin statements which had been made by his own witness. The Gaskin rule has to do with disclosure of a witness's prior statement for cross-examination. There normally would be no need for the Gaskin statements of one's own witness, for one normally may not cross-examine one's own witness. That is all that I read *Bizzarri* to say. It does not limit the Gaskin rule to either party's witnesses.

## APPELLANT'S MOTION FOR REHEARING

CLINTON, Judge, concurring.

The Court Panel held trial court was not in error when it ordered Dr. David R. Bak-

er, a practicing psychiatrist who had examined appellant, to produce and deliver to the prosecution all notes made by Dr. Baker during the course of his examination of appellant. The Panel reasoned that once Dr. Baker had been called to the witness stand by appellant, presented as an expert in his field and testified with respect to the sanity defense, "his reports were no longer privileged and were discoverable." For that reason, said the Panel, "we need not consider these [other] contentions," one of which is regarding what was called the "recollection refreshed" rule.

However, the Court En Banc has proceeded to address the "recollection refreshed" rule, and today the majority seems to have engrafted a part of "Present Recollection" and a part of "Past Recollection." See *Wood v. State,* 511 S.W.2d 37, 43 (Tex.Cr. App.1974) and Ray, Texas Law of Evidence, § 541, 1 Texas Practice 512 *et seq.*

Lost somewhere, though, is the finding by the Court Panel that, with respect to the *attorney-client* privilege asserted by appellant, "once Dr. Baker took the stand his reports were no longer privileged and were *discoverable.*"[1] That the majority fails to address that finding is likely to become the focus of much debate when similar situations are again presented. Especially so now that the Legislature has created that which did not exist in the common law: privileged communications between *physician and patient.* Compare Ray, op. cit., § 431, 1 Texas Practice 415–416, with the Medical Practice Act, Article 4495b, § 508, and Article 5561h, Confidentiality of mental health information of individual, V.A.C.S.[2]

I do not agree that reports of Dr. Baker were "discoverable" because he took the stand, under the circumstances presented here. But since the majority leaves that

matter in limbo, there is not cause to dissent. Though the rule of "recollection refreshed" fashioned by the majority to apply to every witness who uses any qualified writing to refresh his memory for the purpose of testifying strikes me as a sudden break with years of decisions under the common law here and elsewhere, see Ray, op. cit., § 542, 1 Texas Practice 513 *et seq.,* it is not all that radical.[3]

Accordingly, I concur in the opinion of the Court insofar as it develops, announces and applies the new rule, as well as in the judgment of the Court.

## APPELLANT'S MOTION FOR REHEARING

TEAGUE, Judge, dissenting.

After reading and studying the majority opinion, I have concluded that, whatever else it may stand for, it will in the future deal much mischief to witnesses who testify for prosecuting and defense attorneys, much misery to the respective attorneys, and a massive headache for the conscientious, and objective trial court judge. I find that in one, two, and three fasion, the majority has implicitly overruled such long standing rules of law of this State governing the following: "The Past Recollection Recorded" and "The Present Recollection Revived" rules of law; "The Gaskin" rule of law; and the "Use Before the Jury" rule of law, as to when and under what circumstances a cross-examiner shall have access to any writings of the testifying witness. In the future, by today's implicit and unlimited holding, although the opinion speaks only of "notes" of a witness, nevertheless, I believe that a cross-examiner, whether he be a prosecuting attorney or a defense attorney, should now be entitled to receive

---

1. All emphasis is mine unless otherwise indicated.

2. Clearly the Legislature as a matter of public policy and the medical profession as a matter of ethics are insistent that communications between patient and physician be protected against disclosure except in limited circumstances. Conventional drill of legal scholars is that "privileges are blockades to the ascertain-

ment of truth and should be conservatively and reluctantly granted." Ray, op. cit., § 413, n. 62, 1 Texas Practice 417, quoting Comment to Rule 27 of original Uniform Rules of Evidence. Patently the Legislature and medical community are marching to a different drummer.

3. See Federal Rules of Evidence, Rule 612, quoted in full by the majority opinion.

anything in writing from the witness, for cross-examination purposes, provided that the cross-examiner has created an issue from the witness' testimony. By the majority opinion, that issue can be created when the cross-examiner merely asks the witness whether he ever had, prior to testifying, referred to such writing/s which pertained to his testimony in order to refresh his present recollection. Once that condition has been satisfied, then, by today's majority opinion, the cross-examiner will be entitled to inspect any writings the witness previously *used* to refresh his memory. The cross examiner will be entitled to use the writings in order to test the credibility of the witness and determine if the writings could properly or did refresh the witness' recollection.

The majority implicitly tells us that it matters not in what form or type the witness comes when he or she arrives in Court prior to testifying in a cause, nor does it state that the witness had to personally prepare the memoranda. Because the majority does not explicitly state any limitations on its new rule of law, I, therefore, strongly recommend to prosecuting attorneys and defense attorneys that they carefully read the following, which I find the majority opinion implicitly states to be the new rule. In doing so, please substitute for the names "Baker" or "Dr. Baker", the word "witness", because in this instance the witness, Dr. Baker, is merely the medium through which the Court's majority chose to express its new rule of law.

## THE BACKDROP

The right to demand inspection of notes used by a witness to refresh his memory has been limited by us to writings used by the witness on the stand. Such limitation has been criticized by text writers and courts of other jurisdictions... The fact that other jurisdictions and textbook writers have criticized a rule we have embraced does not, standing alone, furnish reason for abandonment of such rule. However, if precedent does not have some sort of reasonable underpinning, we should not bury our heads in the sand when such criticism is voiced.

## THE RULE

While notes in the present case were not used by Dr. Baker before the jury, their contents became an issue after the witness stated that he had referred to such notes before testifying in order to refresh his present recollection. Testimony showing Baker's act in referring to the notes was the functional equivalent of Baker having actually referred to his notes in the presence of the jury for the purpose of refreshing his present recollection. It was then permissible for the State to inspect the notes in order to test the credibility of Baker if the notes could properly or did refresh his recollection.

As a good rule of evidence works both ways, see *Montemayor v. State,* 543 S.W.2d 93, 99 (Tex.Cr.App.1976) (Douglas, J. Dissenting Opinion On State's Motion for Rehearing),* the above and new rule should apply not only to witnesses who testify for the accused, but also to witnesses who testify for the prosecuting attorney.

Now that we all know what the new rule of law is, see supra, let us pose some hypothetical questions. But first, a statement: The majority opinion does not state that Dr. Baker comes within the attorney-client privilege, cf. the original panel opinion, or, for that matter, any other privilege. I must, therefore, as I am sure the members of the Bench and Bar of this State will do in the near future, ask the following questions: Does the majority opinion's holding also mean that even if a witness comes within the boundaries of the attorney-client privilege, see Art. 38.10, V.A.C.C.P., for purposes of cross-examination, there are not to be any limitations on what writings of the witness the cross-examiner is entitled to receive from the witness? Does this include a testifying defendant? What if the defendant's spouse testifies for the defendant? Or the prosecution? See Art.

* See also *Coleman v. State,* 545 S.W.2d 831, 835 (Tex.Cr.App.1977).

38.11, V.A.C.C.P., and *Taylor v. State,* 74 Tex.Cr.R. 3, 167 S.W. 56, 61 (1914). What if the defendant's regular psychiatrist, cf. Dr. Baker, supra, testifies for the defendant? What if the State's psychiatrist testifies for the State? See Art. 5561h, V.A.C.S., and *Abell v. Frank,* 625 F.2d 653 (5th Cir.1980); *Ex parte Abell,* 613 S.W.2d 255 (Sup.Ct.Tex. 1981). What if the defendant's religious adviser testifies for the accused? See Art. 3715a, V.A.C.S. What if the State's witness is an informer? See *United States v. Doe,* 525 F.2d 878 (5th Cir.1976). What if the witness is a "self-incrimination" type witness? See *Draper v. State,* 596 S.W.2d 855, 857 (Tex.Cr.App.1980). What if the State's witness is a policeman? By its failure to elaborate on its new rule of law, which, as noted, I believe will effectively overrule several major rules or principles of law, I find that the majority opinion does a disservice to the Bench and Bar of this State by such omission.

As the majority fails to elaborate on its new rule of law, I, like everyone else, must wait and see how it will be applied in the future. But, as I read the opinion, it leads me to believe that not only defendants, but prosecuting attorneys as well, have received a possible uninvited and non-asleep bed partner. And I must not overlook trial judges: What standard is to be used if a trial judge fails to turn over to a defendant rightfully demanded "notes" a testifying witness has? Will the rule actually end up being a one-way street? Today, the majority states that the prosecutor asked for the notes and the trial judge ordered the witness to turn the notes over to the prosecuting attorney for cross-examination purposes, and in this there was no error. Will this Court's same majority, tomorrow, where a police officer testifies for the prosecution and the defendant, through his attorney, has rightfully demanded, but is refused, the officer's notes and offense reports for purposes of cross-examination, after the officer has testified that he had refreshed his memory from such notes prior to testifying, if there is a conviction and an appeal, summarily reverse the conviction? Because I believe

that conscientious and objective trial court judges throughout the State will give this opinion the meaning it rightfully deserves, the majority opinion, perhaps unknowingly, also expands the rights of a defendant to discovery of materials within the possession of the prosecuting attorney. Cf. *Quinones v. State,* 592 S.W.2d 933, 940 (Tex.Cr.App.1980); Art. 39.14, V.A.C.C.P. By the excerpt contained within Judge Clinton's dissenting opinion, I observe that the prosecuting attorney not only wanted to view the materials of the witness, but additionally wanted to "photostate [sic] those notes prior to [his] cross examination." As the excerpt reflects, the trial judge ordered defense counsel to "deliver the notes" to the prosecuting attorney, and, as we have noted, through its adoption of the new rule of law, the majority states that the trial judge made the correct ruling. Thus, in the future, if a testifying State's witness has had privy to the entire file of the prosecuting attorney, I assume that, upon demand, the prosecuting attorney must now turn over to the defense attorney the entire State's file *and* the trial court judge must allow the defense attorney a reasonable period of time in order to "photostate" all of the documents in the file, which, of course, should include the work product of the prosecuting attorney.

To the Court's adoption of the new rule of law, as it is presently worded, and to what I fear is an expansion of the abuse of discretion rule of law, as well as the opinion's failure to elaborate on the new rule of law, I must respectfully dissent.