**Loyal E. LUNDSTROM, Appellant,**

v.

**STATE of Texas, Appellee.**

**No. 11–83–221–CR.**

Court of Appeals of Texas, Eastland.

July 12, 1984.

Bill B. Hart, Eastland, for appellant.

Emory C. Walton, Crim. Dist. Atty., Eastland, for appellee.

DICKENSON, Justice.

The jury found that Loyal E. Lundstrom was guilty of murder[1] and assessed his

---

1. TEX.PENAL CODE ANN. sec. 19.02 (Vernon 1974) defines the offense and declares it to be a felony of the first degree.

punishment at confinement for life.[2] We affirm the conviction.

The evidence is sufficient to support the jury's finding that appellant is guilty of murder as alleged in the indictment:

> [T]hat Loyal Edward Lundstrom on or about the 3rd day of March, A.D., 1983 ... did then and there intentionally and knowingly cause the death of an individual, namely: Doris Eileen Lundstrom, by shooting her with a shotgun....

Appellant and decedent were married, and they were active in their church and in the community where they lived. Appellant was Mayor Pro Tem of the City of Cisco, and his wife was President of the Parent-Teachers Organization. They operated a motel, and they also represented two bus companies by handling freight and selling tickets. The two of them also operated a business selling, preparing and installing cemetery monuments.

The record indicates that appellant and decedent had been having marital problems prior to her death. At that time appellant was 59 years of age, and his wife· was 27 years of age. They had five children: a fourth grader, a third grader, a second grader, a first grader, and one child who was too young for school.

At the time of the shooting the four older children were at school. Appellant took the youngest child to his preacher, told the preacher a false story about having to take his wife to see about her injured brother, and asked the preacher to pick up the other children at school and take care of them until he and his wife returned. Appellant then left the state. The victim's body was discovered after the preacher and other friends became concerned because they had not heard from the Lundstroms and had also learned that the story about the wife's brother's injury was false. After writing a letter of explanation to his preacher, appellant called another friend

and then returned to Texas. At that time he was arrested and charged with murder.

Appellant has briefed five grounds of error. First, he argues that the trial court erred in failing to grant his motion for change of venue.

Appellant's Motion for Change of Venue alleged that "there ˙ exists in Eastland County, Texas so great a prejudice against the defendant that the defendant cannot receive a trial by an impartial jury free from outside influences and there is a reasonable likelihood that a fair trial cannot be obtained" in Eastland County or in the adjoining judicial districts. The motion was verified by appellant and supported, at least in part, by affidavits of five residents of Eastland County who swore:

> *I am aware of the contents* of the Defendant's motion for change of venue in the above entitled and numbered cause, and *it is my opinion* that the Defendant cannot obtain a fair and impartial trial in Eastland County, Texas. *My opinion is based on newspaper articles and radio and television broadcasts* concerning the Defendant which in my opinion were inflammatory and prejudicial *and conversations with other residents* of Eastland County, Texas, who are also of the belief that the Defendant cannot obtain a fair and impartial trial in Eastland County, Texas. (Emphasis added)

We note that the supporting affidavits do not verify the contents of the motion, do not state the statutory grounds and are expressed as opinions rather than facts.

The State controverted that motion with affidavits from five residents of Eastland County who swore that:

> [T]here does not, in fact, exist in Eastland County, Texas, so great a prejudice against the said Loyal Edward Lundstrom, Defendant, that he cannot obtain a fair and impartial trial in this cause in this county. The said Defendant can ob-

---

**2.** TEX.PENAL CODE ANN. sec. 12.32 (Vernon Supp.1984) provides that an individual adjudged guilty of a felony of the first degree shall be punished by confinement for life or for any term of not more than 99 nor less than 5 years. An optional fine of not more than $10,000 could also have been assessed by the jury.

tain as fair and impartial trial in this county as elsewhere.

Appellant took the position that the State failed to properly controvert his motion for change of venue; consequently, no testimony was offered in support of, or in opposition to, the motion. Appellant argues that he is entitled to an automatic change of venue because the State's affidavits do not specifically attack the "credibility" or "means of knowledge" of the persons who gave affidavits supporting the motion for change of venue. See TEX.CODE CRIM. PRO.ANN. art. 31.04 (Vernon 1966).[3] Appellant's contention that the State's affidavits are insufficient is supported by the recent case of *Turner v. State*, 641 S.W.2d 383 (Tex.App.—El Paso 1982, pet'n ref'd), and by dicta in the older cases of *Davis v. State*, 19 Tex.Ct.App. 201 (1885) and *Carr v. State*, 19 Tex.Ct.App. 635 (1885).

We disagree with *Turner v. State*, supra, and we note that the Court of Criminal Appeals has made it abundantly clear that its refusal of a petition for discretionary review adds nothing to the precedential value of an opinion from one of the Courts of Appeals. See *Sheffield v. State*, 650 S.W.2d 813 (Tex.Cr.App.1983, en banc). *Turner* relied upon two cases which were written in 1885 by the old Texas Court of Appeals. Those cases are factually distinguishable, and the language relied upon by *Turner* is dicta which was not essential to the result reached in either of those cases. In *Davis v. State*, supra, the conviction was affirmed because the evidence which was introduced on the matter of venue was sufficient to support the trial court's action in overruling the application to change venue. In *Carr v. State*, supra, the trial court rejected the defendant's right to make proof in support of his application for change of venue, and the Court of Appeals held that: "This was error for which the judgment must be (reversed and the cause) remanded." Further, the State's affidavits

in *Carr* did not attack both grounds alleged in the application for change of venue.

Moreover, if the law is as rigid as the dicta in *Davis* and *Carr* would indicate as to what the State's affidavits must say in order to controvert the issue of venue, similar strictness should be applied to the affidavits supporting the motion for change of venue. In this case we note that appellant's five affiants each said they were "aware of the contents of the Defendant's motion for change of venue;" however, they did not swear that those facts were true. Those affidavits were merely made on information and belief, for the affiants swear only to their "opinion" that appellant cannot obtain a fair and impartial trial in the county. The affidavits do not swear to the "fact" that: "There exists in the county where the prosecution is commenced so great a prejudice against him that he cannot obtain a fair and impartial trial." See TEX.CODE CRIM.PRO.ANN. art. 31.03 (Vernon Pamph.Supp.1984).

The first ground of error is overruled. We hold that the State's affidavits impliedly attacked the credibility and means of knowledge of the affiants supporting appellant's motion for change of venue. See McCormick & Ray, Texas Law of Evidence secs. 682–683 which indicates that a witness may be impeached if contradicted by other witnesses upon a relevant or material matter. Moreover, appellant's supporting affidavits were defective, and the venue issue was not properly raised.

Appellant also cites *Stapleton v. State*, 565 S.W.2d 532 (Tex.Cr.App.1978), and *Durrough v. State*, 562 S.W.2d 488 (Tex. Cr.App.1978, en banc). Those cases are not in point because no controverting affidavits were filed in either of them. In this case the State did file controverting affidavits in substantial compliance with Article 31.04, supra.

After the trial court overruled the motion to change venue, appellant's request for

---

**3.** Article 31.04 states:

The credibility of the persons making affidavit for change of venue, or their means of knowledge, may be attacked by the affidavit of a credible person. The issue thus formed shall be tried by the judge, and the motion granted or refused, as the law and facts shall warrant.

individual voir dire of the potential jurors was granted. This made it possible for each potential juror to be interrogated at length about his or her ability to give appellant a fair trial based upon the evidence introduced from the witness stand. We note that all twelve jurors were accepted by appellant and that appellant did not use all of his peremptory challenges. See *Von Byrd v. State*, 569 S.W.2d 883 (Tex.Cr.App. 1978, en banc).

In his second ground of error, appellant urges error by the trial court in refusing his request for inspection of the police files after Officer Hobbs and Chief Whittle testified they had refreshed their memory by referring to those files before testifying at the pre-trial hearing on the motion to suppress. This ground is overruled. That testimony was given at a pre-trial hearing, and there was no "use before the jury" under *Gaskin v. State*, 353 S.W.2d 467 at 469 (Tex.Cr.App.1961), nor was there the "functional equivalent" under *Ballew v. State*, 640 S.W.2d 237 at 244 (Tex.Cr.App.1980). The trial court did not err in refusing appellant's request to examine and copy the entire police file. See TEX.CODE CRIM.PRO.ANN. art. 39.14 (Vernon 1979).

Appellant argues in his third ground that the trial court erred in overruling his motion for mistrial after the State's attorney asked the following question of Police Officer Hobbs:

Q And, whereabouts in Cisco did you take this confession?

A In the City Council Chambers on the second floor of city hall.

At that point appellant's attorney requested a conference at the bench, and the following took place outside the hearing of the jury:

DEFENSE ATTORNEY: The question that was asked by the State's attorney was, where was the confession taken or given—That confession has been ruled out by this Court, and implication before

the jury now is that the confession—That there was a confession given....

\* \* \* \* \* \*

STATE'S ATTORNEY: Judge, let me say, if I did say "confession" I didn't mean it, and I didn't even think about it. *I was thinking about the warning,* and if I did use the word "confession" it was inadvertently.... (Emphasis added)

DEFENSE ATTORNEY: I don't think you purposely did that. I'm not accusing (the State's attorney) of doing that. I am accusing the fact that it has come out.

The trial court then sustained the objection, overruled the motion for mistrial, and instructed the jury to "disregard the last question given by the District Attorney, and the last answer given by the witness."

Under the circumstances we hold that the trial court's ruling was correct. The oral confession had been suppressed because the statutory warnings which were given immediately prior to the statement were not given "during the recording," as required by TEX.CODE CRIM.PRO.ANN. art. 38.22, sec. 3(a)(2) (Vernon Supp.1984). Even though the oral confession was voluntary and the required warnings were given, the trial court correctly followed the statutory mandate that it be suppressed because those warnings were not given "during the recording" of the oral confession. The letter which confessed to the shooting was admissible because the required warnings were given, and the letter is not subject to exclusion under Article 38.22, sec. 3(a)(2), supra. Consequently, the State's inadvertent reference to a "confession" when it was talking about the "warning" (which was signed by appellant and which preceded his disclosure of the incriminatory letter) does not automatically require a reversal of this conviction. The cases cited by appellant are factually distinguishable, for in each of those cases the inadmissible evidence gave the details of the suppressed confession. Here, no details were given. Moreover, the incriminatory letter shows that appellant did in fact "confess" to shooting his wife. No reversible error is

shown, and the third ground of error is overruled.

■ Appellant argues in his fourth ground of error that the trial court erred in admitting into evidence the letter [4] that he gave to the Cisco police on the ground that it was "acquired as a result of illegal custodial interrogation." This ground is over-

4. The letter reads in full as follows:

Sunday eve 3–6–83

Dear Pastor,

To say I'm sorry for all I know you have been thru is small I know. But please don't hate me I need the prayers of you & the people more than ever. I must write or tell some one what really took place on Thursday morn.

I got home from Abilene with the children about 9:45 we were all so happy & thankful to see our car in #2 carport knowing Doris was home. The children we told to get ready & we would bring them to school not too late to go. Doris called me aside & said I was a fool to cry & this made the children to cry also. She also said don't expect any more kisses from her as that was over. I couldn't quite understand her reason but she assured me after she brought the kids to school she would give me her plan for our lives.

So she then took the kids off to school about 5 to ten & I took care of customers. She returned called me into the Bedroom & told me this. First she said its our marriage its all over between us. quote I want the business, which I can get Nick from Cleburne Modern Monuments to help me do the work on stones & set them. I want the car & you make the Payments, I want all the equipment & property we have. I want the children without you around. In short she said you have guessed it, I want a divorce to be free from you. She then went on to say you can take the pickup & your toolbox in the shop, Also your personal belongings in the Closet & desk. But I do want you out of this house & place before the kids get home so they don't get up set. I have planned this while I was away last nite. We have always kept the rifle & shot gun loaded by the bed for prowlers at nite. I know it must of been at this time I picked up the gun with no plan to shoot but to scare her & said I want the truth. She told me she had had a couple small affairs in the past year with a couple of guys but none of them were serious. But then she said if its the truth you want you Loyal are just too old to be my husband I need a younger man, Also the Children sure need a younger daddy instead of a old granpa.

It must of been with those words unknowingly I cocked the gun pulled the trigger. I don't remember even doing it. I stood there in real shock for about ten minutes I know before it hit me what happened. Billy had the TV on & was sitting on the couch watching it as our bedroom door was shut. When I came out of the Bedroom.

I don't remember where I put the gun, as I say we kept them by the bed at nite & put them in the closet just outside our bedroom door every morning. But you know all that happened that nite before, so the kids couldn't get hurt, as it has a hook on it high up out of there reach & also its by the hot water heater. I kept a extra shell on the tape deck to every nite just all for protection of the family.

Pastor I know I lied to you about Gordon & the accident for which I am very very sorry but in my shock its the first thing that came to my mind & I knew I couldn't face any one for a time. My heart felt like it was ready to burst.

I know Doris has been thru a lot. I prayed daily for her. Believe me next to God Doris was first & then my family. I tried so hard to give her the very best in Life & felt she was happy. She knew she could ask me for anything & I would get it for her. I also know she was having a spiratually struggle & running from God. Because two weeks before when she got upset about a small matter I told her that evening we need to pray more together like we used too. She laughed & said that will never solve anything because I can't pray & get any answers. I feel as I said Wed. nite we should of had Counsel sooner but when I mentioned it all she said is why don't you just send me to Whitica Falls for there is where I will end up at.

Pastor the first two days I couldn't think eat or sleep since then as David Prayed in the 51 Palsm I have prayed also, for Gods forgiveness & his blood to wash away my sin which happened without any thought or intention. I know truthfully I wanted to scare her not hurt her, for I had never used either gun before for anything just had them for protection of the home & family.

Well I have poured out my heart & told you truthfully what happened. Please give my love to Linda & the Kids Billy needs a shot ever 8 to ten days without fail for his Allergy. It is marked on the Calendar by my desk. Also she was to have his ear checked by the Doctor Friday.

I had to tell some one for I kept this botteled up in heart so long to tell over these four days since it happened.

You are open to whom you choose to reveal the contends of this letter Pastor. I love the Church & you as the Pastor.

You have been so much help to the family. May God bless you & your wife & I hope she is much better.

Now I must say I will close & may call you in the very near future at Church. For I know I must come back regardless what people will think or say.

Please spend much time in prayer for the family & me that I will have the courage to face the law.

Sincerely love,
Loyal

ruled because the custodial interrogation was not illegal. Appellant had been warned by a magistrate and also by the Cisco police in full compliance with *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966) and TEX.CODE CRIM.PRO.ANN. art. 15.17 (Vernon Supp. 1984). The fact that the warning preceding the oral statement was not recorded only makes the statement inadmissible because of the language contained in Article 38.22, sec. 3(a)(2), supra. That fact does not make the interrogation illegal, and it does not bar the admission of the incriminating letter which appellant voluntarily gave to the police. Appellant's spontaneous act of producing the letter was not in response to interrogation. This occurred after the interrogation had been completed. Moreover, there is no ground of error complaining as to the admission into evidence of the other letter which appellant mailed to his pastor. That letter is virtually identical to the letter which appellant gave to the Cisco police.

 In his last ground of error appellant argues that the evidence is insufficient to disprove the exculpatory statements in the two letters which were introduced into evidence. Those statements are:

It must have been with those words unknowingly I cocked the gun and pulled the trigger. I do not remember doing it....I have earnestly prayed also for God's forgiveness and his blood to wash away what I did without any thought or intention of harm. I know truthfully I wanted to scare her only not hurt her.

The evidence must be reviewed "in the light most favorable to the verdict." *Houston v. State*, 663 S.W.2d 455 at 456 (Tex.Cr.App.1984, en banc). When viewed in that light, we hold that the evidence is sufficient for a rational jury to find the essential elements of the crime beyond a reasonable doubt.[5] Consequently, the evidence is sufficient to disprove the exculpa-

tory statements contained in the two letters. The jury was instructed that the State was bound by the exculpatory statements unless the jury was convinced beyond a reasonable doubt that the exculpatory statements were untrue. Not only do the admissions in the letter support the jury's finding that the shooting was intentional, but also appellant failed to summon help for his wife after the shotgun fired. He fled from the state after making arrangements for the care of his children. See *Maxwell v. State*, 628 S.W.2d 773 at 778 (Tex.Cr.App.1980, rehearing en banc 1982); *Thompson v. State*, 621 S.W.2d 624 at 629 (Tex.Cr.App.1981, en banc). The fifth ground of error is overruled.

The judgment of the trial court is affirmed.

---

5. "I cocked the gun (and) pulled the trigger." See and compare *State v. Lundstrom,* 171 N.W.2d 718 at 725 (Minn.1969), where the majority opinion discussed the circumstantial proof of intent in connection with the death of appellant's first wife and stated: "Unlike pointing a gun at someone and firing it, placing one's hand on another's throat is not in itself likely to cause death or even serious injury."