

COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS

|  |  |  |
|---|---|---|
| JESUS TERRAZAS, | § | No. 08-12-00231-CR |
| Appellant, | § | Appeal from the |
| v. | § | 346th District Court |
| THE STATE OF TEXAS, | § | of El Paso County, Texas |
| Appellee. | § | (TC# 20050D02246) |
|  | § |  |

## **O P I N I O N**

Jesus Terrazas appeals his conviction on two counts of aggravated sexual assault of a child. In his sole issue for review, Appellant maintains that his conviction should be reversed because his prior defense attorney revealed privileged communications to the jury during direct examination when Appellant called him to the stand as a defense witness. We affirm.

### **BACKGROUND**

Because Appellant does not challenge the sufficiency of the evidence, we recite only those facts necessary to the determination of this appeal. During police interrogation following waiver of his *Miranda*[1] rights, Appellant admitted to engaging in oral and vaginal sex with his then thirteen-year-old daughter. He expressed regret for his actions and maintained that this was

---

[1] *Miranda v. Arizona*, 384 U.S. 436, 86 S. Ct. 1602, 16 L. Ed.2d 694 (1966).

the first and only time he had ever sexually abused her. His daughter confirmed the assault occurred through her trial testimony. Appellant's wife also testified that she walked in to her daughter's room the night of the sexual assault, saw her daughter shaking on the bed, and then saw Appellant with only his boxers on and his penis erect.

At trial, the State adduced testimonial evidence from a U.S. Marshall showing that Appellant missed his first trial date because he absconded to Mexico. In an attempt to show that Appellant's flight from the United States was motivated not by consciousness of guilt but by panic over a breakdown in the attorney-client relationship between Appellant and his previous court-appointed public defender Greg Velasquez, Appellant called Velasquez to the stand.

Velasquez testified that he was appointed as substitute counsel and reviewed Appellant's case. At some point during the course of Velsaquez's representation, Appellant informed Velasquez that he wished to hire a different attorney. At trial, Appellant asked Velasquez about the state of the attorney-client relationship prior to Velasquez's withdrawal at Appellant's request:

> Q. And during your representation of Mr. Terrazas, did you ever get the impression that the attorney/client relationship was not in the best shape?
>
> A. Yes
>
> Q. Okay. And why was that?
>
> A. We had conflicts discussing the case, talking about the case, what to do with the case
>
> Q. Personality conflicts, conflict in communication, things of that nature?
>
> A. Yes.
>
> Q. Did Mr. Terrazas ever express to you concern, right or wrong, about your preparation and your manner of preparation for the

2

case?

A.   Well, the problem arose when I would tell him I had been doing this for such a long time and we need to get together and talk about the case. And we wanted to know what the defense was. And we would discuss, but every time I told him what the law was and what the law required for the D.A. to prove and what we needed to do to defend against the allegations, that's where the conflicts arose.

.    .    .

Q.   How would you describe your attorney/client relationship at that point?

A.   He wasn't happy.

Q.   And had he expressed that dissatisfaction to you?

A.   Yes

Q.   And that's not typically unusual in our line of work, right? It happens sometimes?

A.   Yes. It happens a lot.

Q.   And it could be for many different reasons?

A.   Yes.

Q.   And, of course, at some point, you-all had been set for trial in this case?

A.   I think we got set twice, and this was the time that we were supposed to go. I told him we were definitely going. 'We need to sit down and talk.'

Q.   And there was very little communication at that point?

A.   Hardly any communication.

Q.   Okay. And at that point, why did you have to withdraw from the representation?

A.   Well, the case was set for trial. The day before we were set for trial, I called him or he called me, and I told him he needed to

3

come talk in the office. And he told me that he was going to hire an attorney.

Q. And whether that happened or not, did he appear for his court date the next day?

A. No, he did not.

Q. Did you have any other communication after that[?]

A. No, I did not.

Q. And that was part of why you had to withdraw from the representation?

A. I withdrew because I thought there was going to be a conflict of interest, and I had to testify one way or the other.

The jury convicted Appellant on both counts of aggravated sexual assault. He was sentenced to sixty years' imprisonment on each count, to be served consecutively. This appeal followed.

## DISCUSSION

"A client has a privilege to refuse to disclose and to prevent any other person from disclosing confidential communications made for the purpose of facilitating the rendition of professional legal services . . . ." TEX.R.EVID. 503(b)(1). Appellant and the State dispute whether Velasquez's general references to informing Appellant what the law was and what they needed to do to defend the case revealed privileged content. We decline to answer that question, since Appellant is estopped from seeking any relief for privilege violations he himself adduced.

The invited error doctrine precludes a party on appellate review from taking advantage of an error it induced or caused in the trial court. *Woodall v. State*, 336 S.W.3d 634, 644 (Tex.Crim.App. 2011). Assuming *arguendo* that the act of calling Velasquez to the stand did not constitute a waiver of the attorney-client privilege, *cf. Ballew v. State*, 640 S.W.2d 237, 240

4

(Tex.Crim.App. 1980)(attorney-client privilege extended to psychiatrist waived when defendant called psychiatrist to the stand), and assuming that Velasquez revealed information covered by the attorney-client relationship, error, if any, resulted from Appellant's own conduct in attempting to refute the State's contention that his flight represented consciousness of guilt. Appellant called Velasquez to the stand as a defense witness and specifically asked him several questions pertaining to their communications to establish that a breakdown in the attorney-client relationship occurred prior to Appellant's flight. Appellant cannot now complain that his conviction should be reversed because his former attorney actually answered the questions he posed.

The record does not indicate that the State ever sought to elicit privileged information or take advantage of any disclosure. As such, any error falls directly on Appellant's shoulders. Under these facts, Appellant is estopped from using any privilege error stemming from the examination of his ex-attorney to obtain appellate relief. "To hold otherwise would be to permit him to take advantage of his own wrong." *Woodall*, 336 S.W.3d at 644 [Internal quotations omitted]. Finding no justiciable error before us, we overrule Appellant's sole issue.

The judgment of the trial court is affirmed.


October 8, 2014

YVONNE T. RODRIGUEZ, Justice

Before McClure, C.J., Rodriguez, J., and Larsen, J. (Senior Judge)
Larsen, J. (Senior Judge, sitting by assignment)