John M. ABELL, Petitioner-Appellant,

v.

Raymond FRANK, Individually and in his capacity of Sheriff, Travis County, Tx., Respondent-Appellee.

No. 79–2451.

United States Court of Appeals,
Fifth Circuit.

Sept. 11, 1980.

**654**

Walter H. Mizell, Austin, Tex., for petitioner-appellant.

William O. Whitehurst, Suzanne Wood Brown, Austin, Tex., for respondent-appellee.

Before COLEMAN, Chief Judge, REAVLEY and ANDERSON, Circuit Judges.

R. LANIER ANDERSON, Circuit Judge:

Petitioner, a psychotherapist formerly licensed to practice in Texas, is the defendant in two civil actions filed in the district court of Travis County, Texas, by former patients. Plaintiffs in those lawsuits assert several causes of action which relate to petitioner's sexual relationships with them during the periods they were his patients. The issue before us concerns certain interrogatories propounded by plaintiffs which petitioner refuses to answer.[1] Plaintiffs obtained an order from the trial judge compelling petitioner to answer the interrogatories, but petitioner refused to comply. After a hearing in which petitioner was ordered to show cause why he should not be held in contempt for refusing to answer, the trial judge found him in contempt of court and ordered him confined to jail until such time as he complied with the order directing him to answer the interrogatories or until further order of the court.[2] Petitioner was released on bail. He then sought a writ of habeas corpus in the Texas Supreme Court and his petition was denied. He thus exhausted his state remedies as required by 28 U.S.C. § 2254 (1976). He next sought a writ of habeas corpus in the United States District Court for the Western District of Texas pursuant to 28 U.S.C. § 2241(c)(3) (1976). This petition was also denied and petitioner now seeks our review of the district court's denial. He asks us to reverse the district court's order and to order the district court to issue a writ of habeas corpus setting aside and declaring void the state's order of commitment. The basis for petitioner's refusal to answer is his claim of a federal constitutional right to privacy which he asserts on his own behalf and on behalf of any patients whose identities would be revealed if he answered the interrogatories. More specifically, he asserts that the psychotherapist/patient relationship falls within the constitutional right of privacy and that this right includes the right to confidentiality as to the fact of treatment as well as to communications between psychotherapist and patient. He argues in addition that the constitutional privacy right protects one from being required to involuntarily disclose the names of those persons with whom he has been sexually intimate.

---

1. The same interrogatory was propounded by both plaintiffs in the civil actions against petitioner. It reads as follows:

50. Please state whether you have kissed, touched, hugged, fondled or had any sexual contact of any type, including sexual intercourse, with any other client or former patient you have undertaken to treat? _____ If so, please state:
(a) The full name of each such patient;
(b) The date of each such sexual contact;
(c) A complete description of each act of sexual contact; and
(d) Whether each act of sexual contact occurred in your office or at some other location. If at some other location, give the full street address of said location.

2. The court's order of contempt, based as it was upon petitioner's failure to comply with the earlier discovery order made at the instance and for the benefit of the plaintiffs in the civil action, was clearly an order of civil contempt. See Ex Parte Wolters, 64 Tex.Cr.R. 238, 144 S.W. 531, 587–88 (1912).

Prior to oral argument of his appeal but after the United States District Court's denial of petitioner's habeas petition, the Texas legislature passed a privilege statute providing for confidentiality of mental health information.[3] The statute extends to pa-

3. The statute reads in full as follows:

Art. 5561h. Confidentiality of mental health information of individual

**Definitions of this Act**

Section 1. (a) "Professional" means any person authorized to practice medicine in any state or nation, or any person licensed or certified by the State of Texas in the diagnosis, evaluation, or treatment of any mental or emotional condition or disorder, or reasonably believed by the patient/client so to be.

(b) "Patient/Client" means any person who consults, or is interviewed by, a professional for purposes of diagnosis, evaluation, or treatment of any mental or emotional condition or disorder, including alcoholism and other drug addiction.

**Confidentiality of information**

Sec. 2. (a) Communication between a patient/client and a professional is confidential and shall not be disclosed except as provided in Section 4 of this Act.

(b) Records of the identity, diagnosis, evaluation, or treatment of a patient/client which are created or maintained by a professional are confidential and shall not be disclosed except as provided in Section 4 of this Act. Nothing in this section shall prohibit the disclosure of information necessary in the collection of fees for mental or emotional health services, as provided by Subsection (b)(5) of Section 4 of this Act.

(c) Any person who receives information from confidential communications or records as defined by Section 2, other than the persons listed in Subsection (b)(4) of Section 4 who are acting on the patient's client's behalf, shall not disclose the information except to the extent that disclosure is consistent with the authorized purposes for which the information was first obtained.

(d) The prohibitions of this Act continue to apply to confidential communications or records concerning any patient/client irrespective of when the patient/client received services of a professional.

**Privilege of confidentiality**

Sec. 3. (a) The privilege of confidentiality may be claimed by the patient/client or by other persons listed in Subsection (b)(4) of Section 4 who are acting on the patient's/client's behalf.

(b) The professional may claim the privilege of confidentiality but only on behalf of the patient/client. The authority to do so is presumed in the absence of evidence to the contrary.

**Exceptions to the privilege of confidentiality**

Sec. 4. (a) Exceptions to the privilege in court proceedings exist:

(1) when the proceedings are brought by the patient/client against a professional, including but not limited to malpractice proceedings, and in any criminal or license revocation proceedings in which the patient/client is a complaining witness and in which disclosure is relevant to the claim or defense of a professional;

(2) when the patient/client waives his right in writing to the privilege of confidentiality of any information, or when other persons listed in Subsection (b)(4) of Section 4 who are acting on the patient's/client's behalf submit a written waiver to the confidentiality privilege;

(3) when the purpose of the proceeding is to substantiate and collect on a claim for mental or emotional health services rendered to the patient/client; or

(4) when the judges finds that the patient/client after having been previously informed that communications would not be privileged, has made communications to a professional in the course of a court-ordered examination relating to the patient's/client's mental or emotional condition or disorder, providing that such communications shall not be privileged only with respect to issues involving the patient's/client's mental or emotional health. On granting of the order, the court, in determining the extent to which any disclosure of all or any part of any communication is necessary, shall impose appropriate safeguards against unauthorized disclosure.

(b) Exceptions to the privilege of confidentiality, in other than court proceedings, allowing disclosure of confidential information by a professional, exist only to the following:

(1) to governmental agencies where such disclosures are required or authorized by law;

(2) to medical or law enforcement personnel where the professional determines that there is a probability of imminent physical injury by the patient/client to himself or to others, or where there is a probability of immediate mental or emotional injury to the patient/client;

(3) to qualified personnel for the purpose of management audits, financial audits, program evaluations, or research, but such personnel may not identify, directly or indirectly, a patient/client in any report of such research, audit, or evaluation, or otherwise disclose identities in any manner;

(4) to any person bearing the written consent of the patient/client, or a parent if the patient/client is a minor, or a guardian if the patient/client has been adjudicated incompetent to manage his personal affairs, or to the patient's/client's personal representative if the patient/client is deceased;

(5) to individuals, corporations, or governmental agencies involved in the payment or collection of fees for mental or emotional health services performed by a professional as defined in Section 1 of this Act; or

tients of psychotherapists the privilege to have their identities and communications with psychotherapists remain confidential. Vernon's Ann.Civ.St. Art. 5561h. The psychotherapist is given the right to assert the privilege on behalf of his patient. The statute contemplates certain exceptions to the privilege, not relevant here, and provides for civil penalties in the event its provisions are violated. Its effective date is August 27, 1979, and it contains a provision that "the prohibitions of this Act continue to apply to confidential communications or records concerning any patient/client irrespective of when the patient/client received services of a professional." See § 2(d).

After the statute went into effect, petitioner filed a motion in the district court of Travis County to reconsider the disclosure order and the judgment of contempt. His motion alleged that the newly enacted privilege statute applies to exclude from disclosure the information the court had ordered the defendant to produce. Appellant moved the court to rescind its order of contempt. Appellant's motion is now pending in the Texas state court.

The effect of the new privilege statute on the instant case is not clear. It is conceivable that the statute will be interpreted to invalidate the order underlying the contempt order; that is, the Texas state court might find that the privilege operates retroactively to forbid disclosure of the information ordered by the court to be disclosed.[4] Apart from any retroactivity issue, however, the impact of the statute on any action appellant might now take must be considered. It appears that in order for appellant to purge himself of contempt, he must divulge the information the court ordered him to disclose. But such disclosure now will apparently violate the prohibitions of the privilege statute and thus subject appellant to civil liability. The Texas state court may therefore decide that the contempt order cannot stand.[5]

This case falls within the ambit of the *Pullman*[6] abstention doctrine. *Pullman* abstention is appropriate " 'in cases presenting a federal constitutional issue which might be mooted or presented in a different posture by a state court determination of pertinent state law.' " *Colorado River Water Conservation District v. United States*, 424 U.S. 800, 814, 96 S.Ct. 1236, 1244, 47 L.Ed.2d

---

(6) to other professionals and personnel under the direction of the professional who are participating in the diagnosis, evaluation, or treatment of the patient/client.

**Legal remedies**

Sec. 5. A person aggrieved by a violation of this Act may petition the district court of the county in which the person resides, or in the case of a nonresident of the state, the district court of Travis County, for appropriate injunctive relief, and the petition takes precedence over all civil matters on the docket of the court except those matters to which equal precedence on the docket is granted by law. A person aggrieved by a violation of this Act may prove a cause of action for civil damages.

**Severability clause**

Sec. 6. If any portion of this Act is declared invalid or unconstitutional, it is the intention of the legislature that the other portions shall remain in full force and effect, and to this end the provisions of this Act are declared to be severable.

4. *Cf. In re Timmons*, 607 F.2d 120, 124–25 (5th Cir. 1979) where this court, reviewing a federal district court's criminal contempt order, observed "An order of civil contempt cannot stand if the underlying order in which it is based is invalid, for its only purpose is to se-

cure compliance with the order. Once the order is decreed invalid, compliance is no longer required . . . . The validity of a criminal contempt conviction resulting from violation of a court order, however, does not turn on the validity of that order, [citations omitted] even if that order is later found to have infringed constitutional rights."

5. Under Texas law, impossibility of compliance or inability to comply with the court's order to purge the contempt may excuse failure to comply. 12 Tex.Jur.2d *Contempt* § 52 (1960); *Ex Parte Adair*, 222 S.W.2d 324 (Tex.Civ.App. 1949). We do not address whether exposure to civil liability constitutes impossibility sufficient to excuse compliance. Nor do we answer the question whether an impossibility "defense" may properly be raised at a motion for reconsideration of the state court's orders compelling answers to interrogatories and adjudging petitioner in contempt. These are issues for the Texas court.

6. *Railroad Commission of Texas v. Pullman Co.*, 312 U.S. 496, 61 S.Ct. 643, 85 L.Ed. 971 (1941).

483 (1976) (quoting *County of Allegheny v. Frank Mashuda Co.*, 360 U.S. 185, 189, 79 S.Ct. 1060, 1063, 3 L.Ed.2d 1163 (1959)). The prerequisites for *Pullman* abstention are that "(1) there must be an unsettled issue of state law; and (2) there must be a possibility that the state law determination will moot or present in a different posture the federal constitutional questions raised." *Palmer v. Jackson*, 617 F.2d 424, 428 (5th Cir. 1980). Like *Pullman*, this case involves a state statute, interpretation and application of which might obviate the necessity for determining the constitutional issues. In *Pullman*, plaintiffs challenged a Railroad Commission regulation as unauthorized by Texas statutes and as violative of the federal Constitution. The Supreme Court found abstention appropriate because the issue of whether the relevant statute authorized the challenged regulation might dispose of the controversy, thereby avoiding the constitutional issue. In the instant case, the privilege statute might dispose of the question of whether petitioner must answer interrogatory no. 50. The new statute may operate either to invalidate or to excuse compliance with the order compelling petitioner to answer interrogatory no. 50. In either event, of course, we would not need to reach the important and sensitive constitutional issues raised by petitioner.

We cannot state with certainty, however, that the privilege statute will apply to invalidate the state court's order compelling petitioner to answer interrogatory no. 50 in this case. The applicability of the statute to pending litigation and the scope[7] of the privilege are matters which are not clear on the face of the statute and which have not yet been decided by the Texas courts. They are matters which should properly be decided by the Texas court. We need not and do not reach them. Because resolution of these issues in the Texas court is likely to make it unnecessary for us to decide, or may present in a different posture, the important constitutional issues presented in this appeal, we decline to reach the constitutional questions at this time. *Railroad Commission of Texas v. Pullman Co.*, 312 U.S. 496, 61 S.Ct. 643, 85 L.Ed. 971 (1941); *Colorado River Water Conservation District v. United States*, 424 U.S. 800, 96 S.Ct. 1236, 47 L.Ed.2d 483 (1976); *High Ol' Times v. Busbee*, 621 F.2d 135 (5th Cir. 1980); *Palmer v. Jackson*, 617 F.2d 424 (5th Cir. 1980).

We find it particularly appropriate for us to defer decision of these constitutional issues until such time as the state court has resolved the state law issues, in light of the fact that petitioner's motion seeking a rul-

---

7. We note that the interrogatory consists of five separate but interrelated questions. See note 1, *supra*. Petitioner has refused to answer any of these questions. If the privilege statute applies, it would appear to prevent disclosure of the names of patients and any other information which might lead to disclosure of their identities. It is not clear, however, that the privilege statute would prohibit petitioner from replying to the general question posed or that it would prohibit reply to all of the question's subparts. The statute might be interpreted to prohibit reply to even the general question on the theory that the contacts described are protected communications between the psychotherapist and the patient. An affirmative answer to the general questions would reveal that such activity had occurred between petitioner and unspecified and uncounted patients. Such a revelation might cause those who knew the identity of one or more of petitioner's patients to impute to those known patients the activity revealed. We note that the general question posed by interrogatory no. 50, see note 1, *supra*, seeks a simple "yes" or "no" answer to a compound inquiry, *i. e.*, whether appellant engaged in a variety of activity ranging from touching to having sexual intercourse with other patients. A "yes" answer thus would be required even if petitioner merely touched other patients but the inference drawn from a "yes" answer might be that petitioner had sexual intercourse with other patients. Because the answer to the general question might imply that known patients engaged in sexual activity with petitioner, the Texas court might find that the privilege is intended to prevent response to the general inquiry.

If the privilege statute is found to apply to some of the questions but not to all of them, we do not know whether petitioner would persist in his refusal to answer any of the questions posed by interrogatory no. 50. If the state court, in light of the privilege statute, again orders petitioner to answer part or all of interrogatory no. 50 and he again refuses to comply with the state court's order, then petitioner may bring the appropriate constitutional claims before the federal courts once he has exhausted his state remedies.

ing on the applicability of the new statute to his case is currently pending in the state court. *See Harris County Commissioners Court v. Moore*, 420 U.S. 77, 95 S.Ct. 870, 43 L.Ed.2d 32 (1975); *Askew v. Hargrave*, 401 U.S. 476, 91 S.Ct. 856, 28 L.Ed.2d 196 (1971); *Gibson v. Jackson*, 578 F.2d 1045 (5th Cir. 1978), *cert. denied,* 439 U.S. 1119, 99 S.Ct. 1028, 59 L.Ed.2d 79 (1979).[8] Some of the delay typically associated with abstention will thus apparently be avoided here.

We have determined that abstention is appropriate in light of the newly enacted privilege statute. In order to insure that the Texas state court will be able to address the state law issues, we vacate the district court's judgment and remand with instructions that it dismiss petitioner's petition without prejudice.[9]

VACATED AND REMANDED.

---

**8.** Although noting that the particular facts faced in *Gibson* did not present the orthodox abstention situation, this court nevertheless abstained because the probability of avoiding a momentous and difficult federal constitutional question—not of itself sufficient to justify abstention—conjoined with considerations of comity, of avoiding piecemeal litigation, and of avoiding a precedent for retarding pending state court litigation to make abstention appropriate.

Not only is the instant case within the ambit of orthodox *Pullman*-type abstention, but the case for abstention is further supported by the presence here of the pending state court litigation bringing into play the additional *Gibson* factors.

**9.** The reason for our dismissal without prejudice is explained by the Supreme Court's statement in *Harris County Commissioners Court v. Moore*, 420 U.S. 77, 88, n.14, 95 S.Ct. 870, 878, 43 L.Ed.2d 32 (1975), "[O]rdinarily the proper course in ordering '*Pullman* abstention' is to remand with instructions to retain jurisdiction but to stay the federal suit pending determina-

tion of the state law questions in state court. *See Zwickler v. Koota*, 389 U.S. 241, 244, n.4, 88 S.Ct. 391, 393, 19 L.Ed.2d 444 (1967). The Texas Supreme Court has ruled, however, that it cannot grant declaratory relief under state law if a federal court retains jurisdiction over the federal claim. *United Services Life Ins. Co. v. Delaney*, Tex., 396 S.W.2d 855 (1965); *see Romero v. Coldwell*, 455 F.2d 1163, 1167 (5th Cir. 1972); *Barrett v. Atlantic Richfield Co.*, 444 F.2d 38, 45-46 (5th Cir. 1971)."

The Supreme Court then stated that it dismissed the case "to avoid the possibility that some state law remedies might otherwise be foreclosed to appellees on their return to state court" but observed that "dismissal must not be used as a means to defeat the appellee's federal claims if and when they return to federal court." *Harris County Commissioners Court v. Moore*, 420 U.S. at 89, n.14, 95 S.Ct. at 878 (1975). Similarly, we want to make clear that the federal forum will be open in this case if the state forum does not resolve the controversy.