CECILIA M. ALTONAGA, UNITED STATES DISTRICT JUDGE
THIS CAUSE came before the Court on Defendants, the City of Miami and Devin Cejas's Motion to Dismiss [ECF No. 13], filed March 5, 2018. Plaintiffs, 3637 Corp., Inc. and Lucky's Arcade, Inc., filed a Response [ECF No. 21], to which Defendants filed a Reply [ECF No. 27]. The Court has carefully considered the parties' written submissions, the record, and applicable law.
I. BACKGROUND
Lucky's Arcade is the owner of real property located on Northwest 36th Street and Northwest 27th Avenue in Miami, Florida. (See Complaint [ECF No. 1] ¶¶ 19, 24-25). 3637 Corp. is the tenant for the premises. (See id. ¶ 17). This case arises out of a decision by the City of Miami and Cejas, its zoning administrator, not to issue a Certificate of Use to 3637 Corp. that would permit 3637 Corp. to operate a supper club at which patrons could purchase alcoholic beverages and enjoy sexually-oriented dance performances. (See generally Compl.).
On April 6, 2009, 3637 Corp. applied to the City of Miami for zoning approval to convert a portion of the existing building-which for "years" had been used as an adult book and video store (id. ¶ 26)-into a "bar and supper club" (id. ¶ 30). Although operation of a bar and supper club "was a permitted use as of right" (id. ¶ 31) in the zoning district applicable to the property (see id. ¶¶ 27-29, 57), 3637 Corp. nevertheless submitted an Application (see id. , Ex. A, Application for a Special Exception [ECF No. 1-3] 2-6[1] ) for approval of a Special Exception for "supper club use with 4COP/quota alcoholic beverage license with beer, wine, and liquor" (id. 3 (capitalization omitted) ).
On June 8, 2009, the City of Miami Zoning Board adopted Resolution No. ZB-R-09-0035 ("2009 Approval") (see id. , Ex. B, Resolution No. ZB-R-09-0035 [ECF No. 1-3] 8-9), granting the requested Special *1324 Exception and allowing for a "bar/supper club establishment" (id. 8; see also Compl. ¶ 32). The 2009 Approval was subject to three conditions: (1) approval of the Special Exception would "run with this operator only" and "any changes to a different operator" would "require a separate special exception"; (2) signage details for the project were to be submitted to the Planning Department for review and approval by separate permit; and (3) the establishment was to "have security and operate with[in the] permitted use." (2009 Approval 8 (alteration added; capitalization omitted); see also Compl. ¶ 33) ). In addition, the 2009 Approval provided the Special Exception had a "time limitation of twelve months in which a building permit must be obtained." (2009 Approval 8 (capitalization omitted); see also Compl. ¶ 34).
In early 2010, 3637 Corp. applied for a modification to the Special Exception to extend the time in which 3637 Corp. was required to apply for a building permit. (See Compl. ¶ 35). On May 10, 2010, the City of Miami Zoning Board adopted a second resolution ("2010 Approval") (see id. , Ex. C, Resolution No. ZB-R-10-024 [ECF No. 1-3] 11-12), granting an "extension of time" of unspecified length for the Special Exception granted in the 2009 Approval to allow "a bar/supper club establishment" (id. 11 (capitalization omitted); see also Compl. ¶ 36).
On May 28, 2010, the Florida Legislature adopted Senate Bill 1752 ("SB 1752") (see Compl., Ex. D, Committee Substitute for Senate Bill No. 1752 [ECF No. 1-3] 14-107), which stated development orders (including special exceptions and building permits) issued by local governments which had an expiration date of between September 1, 2008 and January 1, 2012 were extended and renewed for a period of two years after their original date of expiration (see Compl. ¶ 38). On December 23, 2011, 3637 Corp. sent a Letter (see id. , Ex. E, Request for Extension [ECF No. 1-3] 109) requesting the deadline for acquiring a building permit be extended. (See Compl. ¶ 39 (explaining the Request for Extension notified the City of 3637 Corp.'s intent "to avail itself of the two year statutory extension of development approval time frames") ). The City subsequently granted a two-year extension pursuant to SB 1752 in a document signed on October 30, 2013 (see id. , Ex. F, Notification Form [ECF No. 1-3] 111), which listed the prior "Permit Expiration Date" as "May 28, 2011"; the "New Exp[iration] Date" as "May 28, 2013"; and the "Reason[s] for Extension" as "[r]e-platting of property; extensive County and City permitting process; [and] [e]quitable [e]stoppel" (id. (alterations added); see also Compl. ¶ 39).
The Complaint alleges a timeline of events that does not match up with its exhibits. Sometime after the City granted the two-year extension under SB 1752, "a timely request" for a building permit for construction of the bar and supper club was submitted to the City's building department. (Compl. ¶ 40 (citing id. , Ex. G, Building Department Permit Application [ECF No. 1-3] 113) ).
Plaintiffs allege the "request for a building permit was timely" (id. ¶ 41), "[t]he City processed the request for building permit in 2013" (id. ¶ 42 (alteration added) ), and "[b]y April 2013, the City Building department completed its review of the building permit application for the bar and supperclub and was prepared to issue that permit" (id. ¶ 43 (alteration added) ). However, the Building Department Permit Application cited in the Complaint (see id. ¶ 40), contains a stamp indicating it was not received until December 2, 2015 (see Building Department Permit Application 113). Plaintiffs allege "the building department claimed to have discovered that the underlying Special Exception approval had *1325 expired" (Compl. ¶ 44 (citing id. , Ex. H, Letter from Cejas to Fulford [ECF No. 1-3] 115-17) ), but after "counsel for the project advised the City that a notice of extension of time under SB 1752 had been provided to the City, and that therefore the Special Exception had not expired" (id. ¶ 45 (citing id. , Ex. I, Letter from Krischer to the City [ECF No. 1-3] 119-21) ), "[t]he City subsequently determined that 3637 Corp., Inc.'s invocation of SB 1752 had tolled the time in which the building permit had to have been sought[,] deemed the building permit application to be timely" (id. ¶ 46 (alterations added), and ultimately issued a Master Building Permit "[o]n November 6, 2013" (id. ¶ 47 (alteration added) (citing id. , Ex. J, Master Building Permit [ECF No. 1-3] 123-25) ).
The Letter Plaintiffs cite to in support of their assertion the building department claimed the Special Exception had expired relates to the City's denial of a Certificate of Use, not a building permit (see generally Letter from Cejas to Fulford); and the Letter Plaintiffs cite for the proposition "counsel for the project advised the City that a notice of extension of time under SB 1752 had been provided to the City, and that therefore the Special Exception had not expired" (id. ¶ 45 (citing Letter from Krischer to the City) ), is dated March 31, 2017 (see Letter from Krischer to the City 119), years after the City issued the Master Building Permit on November 6, 2013 (see Master Building Permit 123; see also Compl. ¶ 46).
In any case, the Master Building Permit issued November 6, 2013 specifically identified the intended use as a "supperclub." (Master Building Permit 123; see also Compl. ¶ 48). Nine Supplemental Building Permits were subsequently issued for specific components of the construction. (See Compl. ¶ 49 (citing id. , Exs. K-1 through K-9, Supplemental Building Permits [ECF No. 1-3] 127-57) ).
Sometime later, 3637 Corp. began construction of the bar and supper club, starting with complete demolition of the interior of the existing adult bookstore space. (See id. ¶ 50). Over the ensuing 32 months, 3637 Corp. made physical improvements to the interior of the club, and received and passed inspections from the City for the completed work. (See id. ¶ 51 (citing Supplemental Building Permits) ). In particular, 3637 Corp. installed interior walls; air conditioning; performance stages; lighting systems; sound systems; physical bar and counter tops; carpeting; tile; light displays; mirrors; wall fixtures; furniture; a DJ booth and studio; refrigerators; bar ware and glass ware; and kitchen equipment, as well as "other material associated with bar and supper club use." (Id. ¶ 53).
In 2015, the Building Permit was further amended to show the build out of the entire authorized space. (See id. ¶ 52 (citing Supplemental Building Permits) ). The Master Building Permit states, "all inspections are finalized" (id. ¶ 55 (internal quotation marks omitted) (quoting Master Building Permit) ), and, along with four of the Supplemental Building Permits, indicates "final zoning"; "status completed"; "result: OK"; and "remark: approved" (id. ¶ 54 (internal quotation marks and footnote call number omitted) ).
On June 20, 2016, the City issued a Building Certificate for the premises. (See id. ¶ 56 (citing id. , Ex. M., Building Certificate [ECF No. 1-3] 172-74) ). The Building Certificate, which lists the "Permit Holder" as "Caibai Constuction LLC" and the "Owner" as Lucky's Arcade, states the zoning use for the premises is a "supperclub." (Building Certificate 172 (capitalization omitted) ). The Building Certificate goes on to state "[t]his certificate is issued to the above-named permit holder for the building and premises at the above described location, and certifies that the *1326 work has been completed." (Id. (alteration added) ). While Plaintiffs allege "[t]he 'named permit holder' is Lucky's Arcade" (Compl. ¶ 59 (alteration added) ) and "[t]he Building Certificate[ ] ... thus is ... issued to the ... property owner, Lucky's Arcade" (id. ¶ 60 (alterations added) ), the Building Certificate plainly lists "Caibai Constuction LLC"-not Lucky's Arcade-as the "Permit Holder" (Building Certificate 172).
Plaintiffs explain the Building Certificate is one of two approvals that must be granted by the City prior to the occupancy of a new or remodeled building. (See Compl. ¶ 61). The Building Certificate signifies approval of a building as being safe to occupy; and takes into account, among other things, that the building is structurally sound, fire prevention and protection requirements have been met, and plumbing and electrical have been constructed to code and are safe to use. (See id. ¶ 62). Prior to the occupancy of a new or remodeled building, the City also requires the building be granted a Certificate of Use, certifying the proposed use complies with the City's zoning requirements. (See id. ¶ 63).
Seven days after the Building Certificate was issued, the "principal" of 3637 Corp., James Fulford, began to contact Cejas to schedule a meeting regarding obtaining the Certificate of Use. (See id. ¶ 64 (citing id. , Ex. N, Emails from Fulford to Cejas [ECF No. 1-3] 176-83) ). Approximately three weeks later, Fulford and Cejas met to discuss the issuance of a Certificate of Use. (See id. ¶ 65). The "outcome" of this meeting was that Cejas would undertake to "research the status" of the property and its eligibility for a Certificate of Use. (Id. ¶ 66 (internal quotation marks omitted) ). Over the next nine months, despite constant, numerous, and repeated inquiries by Fulford, Cejas and the City failed to respond with the status of the Certificate of Use or take any other action related to the Certificate of Use. (See id. ¶ 68).
Finally, in March 2017, Cejas issued a letter advising the City was denying 3637 Corp.'s request for a Certificate of Use. (See id. ¶ 70 (citing Letter from Cejas to Fulford) ). The letter identified four grounds for not issuing the Certificate of Use. (See generally Letter from Cejas to Fulford). First, the 2009 Approval and the 2010 Approval granting "Supper Club" use should not have been initially granted because pursuant to Chapter 4, Section 4-7 of the City's Alcohol Ordinance:
no certificate of use and/or occupancy shall be issued to any applicant for consumption or sale of liquor on the premises or off the premises and/or beer and wine for consumption on the premises ... if the place of business of the applicant is situated less than 1,500 feet from a place of business with a prior alcoholic beverage license.
(Id. 115 (alteration added; emphasis omitted) ). According to Cejas's Letter, "[a]t the time [the] application was processed[,] an establishment[ ] known as El Palacio Sport Café, Inc.... [was] located within ... 1,500 feet ... [and] was operating with an Active Certificate of Use for Supper Club with a 4COP liquor license." (Id. (alterations added) ). As El Palacio's supper club use "remain[ed] active" as of March 2017, Cejas determined 3637 Corp.'s application "would not have met the distance requirements set forth in Section 4-7 of the Alcohol Ordinance in 2009, 2010 or today if a Liquor Survey was provided." (Id. 115-16 (alteration added) ).
Second, according to Cejas, the 2009 Approval was subject to the condition the property would be re-platted prior to obtaining any Building Permit. (See id. 116). Building Permit approval had been "nullif[ied]" because re-platting of the land never took place. (Id. (alteration added) ).
*1327 Third, the 2009 Approval was granted on the condition the Special Exception would "run with this operator only" and "any changes to a different operator [would] require a separate Special Exception." (Id. (alteration added; internal quotation marks omitted) ). At the time the 2009 Approval was granted, 3637 Corp. had an "equal principal partnership between ... operator[ ]s ... known as Jerrett Hodas and Martin Hodas." (Id. (alterations added) ). Since that time, however, 3637 Corp. "was sold to 100% principal operator known as James Fulford." (Id. ). According to Cejas, "[t]he transference of a [b]usiness corporation in excess of 50% to a new party constitute[d] a change in operator" and "thus nullif[ied]" the Special Exception. (Id. (alterations added) ).
Last, the Special Exception had expired. Under section 1606.2 of Zoning Ordinance 11000, "[n]o original limitation shall be for more than one ... year nor less than [60] days[,] [n]o extension shall be [granted] for more than one ... year, and not more than one ... extension may be granted for any Special Exception." (Id. (alterations added; internal quotation marks omitted) ). Cejas states in his Letter that pursuant to this rule, the Building Permits "were issued in error[,] as the Exception had expired, and the establishment had not reached the stage of acquiring a Certificate of Use within that time frame." (Id. (alteration added) ). As the Building Permits were issued in error, they conveyed no rights. (See id. ).
On the basis of these four reasons, Cejas stated there was good cause to deny the Certificate of Use. (See id. 116-17). Cejas recommended 3637 Corp. re-apply for supper club use "when distancing requirements pursuant to Chapter 4 are attainable," or apply for a "Restaurant Certificate of Use with the ability to place a 4COP SFS license so long as the property meets the minimum requirements of a 'bonafide' restaurant establishment." (Id. 117).
3637 Corp. timely filed an administrative appeal of Cejas's Letter to the City's Planning and Zoning Board ("PZAB"). (See Compl. ¶ 72 (citing Letter from Krischer to City) ). 3637 Corp. also submitted to the City a request for public records pursuant to Chapter 119, Florida Statutes. (See id. ¶ 73 (citing id. , Ex. Q, Email from Fernandez to Harrington [ECF No. 1-3] 191-93) ). The request, made April 11, 2017, asked the City to turn over any public records containing:
1. Any information collected by the City with regard to the beneficial ownership in a corporation, company, limited partnership or such other legal entity designated as the operator of a Supper Club on any Special Exception application processed pursuant to the requirements of Ordinance 11000 or any Exception application processed pursuant to the requirements of Miami 21 requesting the approval of such a use between January 1, 2002, and April 1, 2017; [and]
2. Any information collected by the City with regard to the approval of a change in the beneficial ownership of a corporation, company, limited partnership or such other legal entity previously authorized by the City to operate a Supper Club use between January 1, 2002, and April 1, 2017.
(Email from Fernandez to Harrington 192 (alteration added) ). In response to this request, the City produced no documentation that would have supported or tended to support its position with respect to the application for Certificate of Use. (See Compl. ¶ 74).
On June 7, 2017, the PZAB denied the appeal by a vote of four to three. (See id. ¶ 76 (citing id. , Ex. R., PZAB Resolution [ECF No. 1-3] 195-96) ). The PZAB decision "was based on evidence indicating *1328 there was a change in operator from the disclosures of ownership furnished when the original application of 3637 Corp.... was originally submitted for a Special Exception hearing." (PZAB Resolution 195 (alteration added) ).
3637 Corp. appealed the PZAB decision to the Miami City Commission (see Compl. ¶ 77), which, on July 27, 2017, affirmed the PZAB decision by a unanimous vote (see id. ¶ 78 (citing id. , Ex. S, Miami City Commission Resolution [ECF No. 1-3] 198-200) ). The City's Resolution explained 3637 Corp. had been afforded an opportunity to be heard by the PZAB at a public hearing before the PZAB on June 7, 2017, where 3637 Corp. was represented by counsel, testimony by professional staff was given, and comments of the public were considered. (See Miami City Commission Resolution 198). As the PZAB denial "was based on evidence indicating there was a failure to advise the City ... of a change in the ownership of 3637 Corp.... when the original application ... granted by Special Exception[ ] provided that the City would be notified of and have to approve a change in ownership," the City upheld the PZAB's decision. (Id. (alterations added) ). 3637 Corp. has sought certiorari review of the City's decision in the Appellate Division of the Circuit Court of the Eleventh Judicial Circuit in and for Miami-Dade County. (See Compl. ¶ 79).
Aside from the City's denial of the Certificate of Use, Plaintiffs also take issue in their Complaint with the City's treatment of 3637 Corp.'s license application to serve alcoholic beverages. On July 19, 2016, the Florida Department of Revenue and the Division of Hotels and Restaurants under the Department of Business and Professional Regulation approved a Florida Department of Alcoholic Beverages license application submitted by 3637 Corp. on behalf of its business, "Candies Cabaret." (Id. , Ex. O, DABT License Application [ECF No. 1-3] 185; see also Compl. ¶ 67). Nevertheless, Cejas and the City refused to sign off on the application. (See Compl. ¶ 67).
Plaintiffs assert Defendants' actions as described in the Complaint were willful and taken with reckless indifference to Plaintiffs' rights, and lacked any pretext as being in fulfillment of a legitimate purpose. (See id. ¶ 80). The 12-count Complaint seeks actual, consequential, and special damages (see id. ¶ 83), as well as declaratory and injunctive relief (see, e.g., id. ¶¶ 82, 86), and includes the following claims: (1) a claim by both Plaintiffs against both Defendants for intentionally silencing protected speech-that is, "sexually oriented dance" (id. ¶ 93)-in violation of the First and Fourteenth Amendments by "delay[ing] and den[ying] ... necessary approvals ... for Plaintiffs to open and operate their proposed supper club" (Count I) (id. ¶ 95 (alterations added); see also id. ¶¶ 85-96); (2) a claim by both Plaintiffs against both Defendants asserting even if the delay and denial of the Certificate of Use had a content-neutral justification, it constitutes an unreasonable and unnecessary restriction on speech that lacks a substantial relationship with a legitimate governmental objective (Count II) (see id. ¶¶ 97-101); (3) a claim by both Plaintiffs against both Defendants that procedural due process requires Defendants be equitably estopped from denying Plaintiffs the Certificate of Use due to the expenditures made by Plaintiffs in reliance on the 2009 and 2010 Approvals (Count III) (see id. ¶¶ 102-18); (4) a claim brought by Lucky's Arcade against both Defendants asserting Defendants are equitably estopped from denying the Certificate of Use because they impermissibly imposed ad hoc requirements regarding ownership of the applicant corporation after effectively "offer[ing] Plaintiffs a welcome matt and invit[ing] Plaintiffs" to make improvements *1329 on the premises" (Count IV) (id. ¶ 136 (alterations added); see also id. ¶¶ 119-39); (5) a claim by Lucky's Arcade against both Defendants asserting denial of the Certificate of Use on the ground the Special Exception lapsed when Martin and Jerett Hodas sold their interest in 3637 Corp. to Fulford is pretextual (Count V) (see id. ¶¶ 140-55); (6) a claim by Lucky's Arcade against both Defendants asserting the denial of the Certificate of Use on the ground another nearby establishment has active alcoholic beverage approvals is pretextual (Count VI) (see id. ¶¶ 156-63); (7) a claim by both Plaintiffs against Cejas asserting Cejas committed perjury by sending his Letter denying the Certificate of Use to the PZAB, even though it contains false statements (Count VII) (see id. ¶¶ 164-74); (8) a claim by both Plaintiffs against both Defendants asserting the City is unconstitutionally seeking to take away Plaintiffs' property protected interest through its zoning regulations and process (Count VIII) (see id. ¶¶ 175-83); (9) a claim by both Plaintiffs against both Defendants asserting the City is improperly construing the zoning regulations in its favor, when it should be construing the regulations in favor of the property owner, and accordingly is unconstitutionally taking Plaintiffs' protected property interest (Count IX) (see id. ¶¶ 184-90); (10) a claim by both Plaintiffs against both Defendants that Cejas unconstitutionally delegated to himself the discretion to interpret the term "operator" as used in the 2009 Approval to mean "owner," resulting in the City taking Plaintiffs' protected property interest by denying the Certificate of Use (Count X) (see id. ¶¶ 191-202); (11) a claim by both Plaintiffs against the City asserting pursuant to the City's planning documents, there is no place in the City where a sexually-oriented adult use can open and operate, and the City's failure to provide adequate alternative avenues of communication for sexually-oriented adult uses is unconstitutional (Count XI) (see id. ¶¶ 203-13); and (12) a claim by both Plaintiffs against the City asserting the City's zoning regulations' prohibition on variances from its adult use zoning rules is unconstitutional (Count XII) (see id. ¶¶ 214-20).
Defendants move to dismiss the Complaint under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6), arguing: (1) the Complaint should be dismissed entirely as to Lucky's Arcade because Lucky's Arcade lacks standing for all claims (see Mot. 12-13); (2) the Complaint should be dismissed against both Defendants because Plaintiffs failed to exhaust administrative remedies, or, in the alternative, because it impermissibly splits a cause of action with 3637 Corp.'s pending state court appeal (see id. 16-18); (3) the Complaint should be dismissed because many of its claims are being considered by the state court in the pending appeal and accordingly the Court should abstain from hearing this case pursuant to Railroad Commission of Texas v. Pullman Co. , 312 U.S. 496, 61 S.Ct. 643, 85 L.Ed. 971 (1941) (see id. 18-20); (4) the Complaint should be dismissed as to Cejas on the basis of qualified immunity (see id. 22-24); (5) Count VII alleging perjury by Cejas should be dismissed because Plaintiffs improperly request the Court declare a violation of a state criminal statute (see id. 20-21), and because Plaintiffs fail to state a cause of action (see id. 21-22); and (6) Counts I, II, XI, and XII should be dismissed because Plaintiffs lack standing (see id. 13-15), or, in the alternative, because Plaintiffs fail to state claims with respect to these Counts (see id. 15), and because the claims are not ripe (see id. 15-16).
For the reasons expressed below, the Court finds Lucky's Arcade lacks standing and dismisses Counts IV, V, and VI. The Court further elects to exercise Pullman abstention and stays the case as to the *1330 remaining Counts. The Court declines to address Defendants' arguments that Counts I, II, XI, and XII, as well as all claims against Cejas, should be dismissed, and so does not reach the Rule 12(b)(6) arguments.
II. LEGAL STANDARD
A defendant may attack subject matter jurisdiction under Rule 12(b)(1) in two ways-a facial attack or factual attack. See Menchaca v. Chrysler Credit Corp. , 613 F.2d 507, 511 (5th Cir. 1980). A facial attack asserts a plaintiff has failed to allege a basis for subject matter jurisdiction in the complaint. See id. In a facial attack, the plaintiff's allegations are taken as true for purposes of the motion, see id. , and the plaintiff is afforded safeguards similar to those provided in challenging a Rule 12(b)(6) motion, see Lawrence v. Dunbar , 919 F.2d 1525, 1529 (11th Cir. 1990) (citation omitted).
In contrast, a factual attack "challenges the existence of subject matter jurisdiction in fact, irrespective of the pleadings, and matters outside the pleadings such as testimony and affidavits, are considered." Menchaca , 613 F.2d at 511 (citation omitted). In a factual attack, courts are free to weigh the evidence to satisfy themselves they have the power to hear the case. See Lawrence , 919 F.2d at 1529 (citation omitted). No presumption of truth attaches to the plaintiff's allegations, and the existence of disputed material facts does not prevent the trial court from evaluating for itself the merits of the jurisdictional claim. See id. (citation omitted). Moreover, "[i]n the face of a factual challenge to subject matter jurisdiction, the burden is on the plaintiff to prove that jurisdiction exists." OSI, Inc. v. United States , 285 F.3d 947, 951 (11th Cir. 2002) (alteration added; citations and footnote call number omitted).
"Because standing is jurisdictional, a dismissal for lack of standing has the same effect as a dismissal for lack of subject matter jurisdiction" under Federal Rule of Civil Procedure 12(b)(1). Cone Corp. v. Fla. Dep't of Transp. , 921 F.2d 1190, 1203 n.42 (11th Cir. 1991) (citation omitted). "A dismissal for lack of subject matter jurisdiction is not a judgment on the merits and is entered without prejudice." Stalley ex rel. U.S. v. Orlando Reg'l Healthcare Sys., Inc. , 524 F.3d 1229, 1232 (11th Cir. 2008) (citing Crotwell v. Hockman-Lewis Ltd. , 734 F.2d 767, 769 (11th Cir. 1984) ).
III. ANALYSIS
A. Lucky's Arcade's Standing
Defendants bring a facial challenge to Lucky's Arcade's standing, arguing it should be dismissed from this case because the Complaint fails to articulate Lucky's Arcade suffered an injury-in-fact. (See Mot. 12-13; Reply 7).
Standing consists of three elements: "The plaintiff must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." Spokeo, Inc. v. Robins , --- U.S. ----, 136 S.Ct. 1540, 1547, 194 L.Ed.2d 635 (2016). "To establish injury in fact, a plaintiff must demonstrate he or she suffered 'an invasion of a legally protected interest' that is 'concrete and particularized' and 'actual or imminent, not conjectural or hypothetical.' " Id. at 1548 (quoting Lujan v. Defs. of Wildlife , 504 U.S. 555, 560, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992) ). For an injury to be particularized, it "must affect the plaintiff in a personal and individual way." Lujan , 504 U.S. at 560 n.1, 112 S.Ct. 2130. For the injury to be "concrete," it must be "real," and not "abstract;" however, it need not be "tangible." Spokeo , 136 S.Ct. at 1548-49 (internal *1331 quotation marks and citations omitted) (explaining intangible violations such as restricting free speech can qualify as concrete harms).
According to Plaintiffs, the Complaint states Lucky's Arcade suffered a particularized harm because it "alleges that Lucky's Arcade is the owner of the subject property, is the landlord to 3637 Corp., and is the permittee of the Building Certificate." (Resp. 8 (citing Compl. 3-4, 10-11, 21) ). Plaintiffs also direct the Court's attention to page 14 of the Complaint, which alleges "Defendants individually, and in concert, inflicted damage on Plaintiffs" (Compl. ¶ 80); and the prayers for relief contained at the end of each Count, which request the Court award Plaintiffs "all actual, consequential, and special damages resulting from of [sic] the actions of the Defendants" (e.g. , id. 17; see also Resp. 8). But these allegations do not articulate an injury particularized to Lucky's Arcade.
Rather, the Complaint states 3637 Corp.-not Lucky's Arcade-is the entity that "wishes to operate a commercial business" on the property (Compl. ¶ 24); 3637 Corp. is the entity that applied for and was ultimately denied a Certificate of Use from the City "to convert a portion of the existing building for use as a bar and supper club" (id. ¶ 30; see also id. ¶¶ 35, 39, 64, 71); 3637 Corp. is the entity that pursued administrative and appellate review of the City's denial of the Certificate of Use (see id. ¶¶ 72-79); and 3637 Corp. is the entity that Plaintiffs allege began construction of the bar and supper club, made physical improvements to the property, and installed equipment and materials associated with bar and supper club use in reliance on the City's representations (see id. ¶¶ 50-51, 53). The Complaint makes no allegations Lucky's Arcade has any interest in operating a supper club on the property, or even that the terms of 3637 Corp.'s lease give Lucky's Arcade a pecuniary interest in 3637 Corp.'s desired business operations on the premises. (See generally id. ). While Plaintiffs articulate how 3637 Corp. was harmed by Defendants' denial of its opportunity to operate a supper club offering sexually oriented dance, they do not state how this decision adversely affected Lucky's Arcade as 3637 Corp.'s landlord.
And Plaintiffs' allegation Lucky's Arcade was the named permit holder on the Building Certificate (see id. ¶¶ 56-60), does not persuade the Court otherwise. First, the Court notes the Building Certificate plainly lists "Caibai Constuction LLC" as the "Permit Holder," and states only that Lucky's Arcade is the "Owner." (Building Certificate 172). Second, even if Lucky's Arcade were the named permit holder on the Building Certificate, Plaintiffs do not articulate what Lucky's Arcade's status as the "permittee of the Building Certificate" (Resp. 8) has to do with the harm alleged in the Complaint. Unlike the Certificate of Use, the City did not deny Plaintiffs the Building Certificate. (See Compl. ¶ 56). Moreover, the Building Certificate is merely "the approval of the building as being safe to occupy: i.e. , that it is structurally sound, that fire prevention and protection requirements have been met, that plumbing and electrical have been constructed to code and are safe to use, etc. " (Id. ¶ 62). The Building Certificate is unrelated to the content of the proposed speech on the premises, and Plaintiffs do not articulate how any of the harms described in the Complaint could be traceable to the City granting the Building Certificate to Lucky's Arcade as the "named permit holder." (Id. ¶ 59 (internal quotation marks omitted) ).
Last, while Plaintiffs insist they do not provide in their Complaint "legal conclusions or mere labels" (Resp. 9), they do just that where they state, "Defendants *1332 individually, and in concert, inflicted damage on Plaintiffs" (Compl. ¶ 80); and by requesting "all actual, consequential, and special damages resulting from of [sic] the actions of the Defendants" (id. 17). The Court does not credit these conclusory statements as true. See Lawrence , 919 F.2d at 1529 (a facial attack on subject matter jurisdiction affords a plaintiff "safeguards similar to those provided in opposing a Rule 12(b)(6) motion"); Rohde v. Bank of Am., N.A. , 591 Fed.Appx. 932, 933 (11th Cir. 2015) ("In considering a [ Rule 12(b)(6) ] motion to dismiss, we must accept as true all facts alleged in the complaint.... We need not, however, accept as true the complaint's legal conclusions." (alterations added; citations omitted) ). As the Complaint fails to articulate how Lucky's Arcade suffered any harm whatsoever as a result of the City or Cejas's actions, Lucky's Arcade lacks standing. All of its claims, including Counts IV, V, and VI, which are brought solely by Lucky's Arcade, are dismissed.
B. The Effect of 3637 Corp.'s Pending State Court Appeal
Defendants argue the Court should dismiss the Complaint in its entirety because Plaintiffs failed to exhaust administrative remedies (see Mot. 16-17); the Complaint impermissibly splits a cause of action with 3637 Corp.'s pending state court appeal (see id. 17-18); and because many of the claims are already being considered by the state court, and therefore the present case is a prime candidate for Pullman abstention (see id. 18-20).
1. Failure to Exhaust Administrative Remedies
Defendants contend because 3637 Corp.'s state court appeal of the PZAB and City Commission's decisions remains pending (see Compl. ¶ 79), and the state court's decision "will address many of the claims raised in the Complaint, and could indeed moot the federal claims pled," the Court should dismiss the Complaint "for failure to exhaust those avenues of review provided for in the City code" (Mot. 17). Defendants direct the Court's attention to DeCarlo v. Town of West Miami , 49 So.2d 596 (Fla. 1950), in which the Florida Supreme Court instructed:
The administrative boards usually provided for the consideration and review of zoning problems are made up of local people, having the advantage of full local information as to the reasons behind the various zoning regulations. Their findings, while not conclusive, are indeed helpful in the ultimate determination of the rights of the parties. Moreover, the inequalities of a zoning ordinance, if called to the attention of such local administrative boards, may frequently be adjusted at that level. Such boards should, at least, be given an opportunity to afford relief, or state their reasons for not doing so.
Id. at 596-97.
Plaintiffs insist "[f]ederal law does not require the exhaustion of administrative remedies prior to the commencement of a federal civil rights action." (Resp. 13 (alteration added; footnote call number omitted) (citing Patsy v. Bd. of Regents , 457 U.S. 496, 102 S.Ct. 2557, 73 L.Ed.2d 172 (1982) ) ). As their suit is brought in part under 42 U.S.C. section 1983 (see Compl. 2), according to Plaintiffs, there is no requirement they first exhaust their administrative remedies before filing the Complaint (see Resp. 13-14).
Defendants do not address Plaintiffs' argument in their Reply. Instead, they state "Defendants reiterate their points in the Motion to Dismiss as to why plaintiffs' claims, which largely mirror or repackage the claims raised in the state court appellate proceedings, should be dismissed for failure to exhaust." (Reply 9 (citing Mot.
*1333 16-18) ). Defendants do not meet their burden of showing the Complaint should be dismissed for failure to exhaust administrative remedies.
First, eight of the nine remaining claims (all but Count VII) assert federal Constitutional violations and are brought pursuant to section 1983. (See generally Compl.). "The Supreme Court repeatedly has made clear that the right to bring an action under § 1983 need not depend on the exhaustion of state judicial or administrative procedures." Fetner v. City of Roanoke , 813 F.2d 1183, 1185 (11th Cir. 1987) (citations omitted); see also Foley v. Orange Cty. , No. 6:12-CV-269-ORL-37, 2012 WL 6021459, at *4 n.5 (M.D. Fla. Dec. 4, 2012) (noting a plaintiff bringing section 1983 claims against county employees for decisions made pursuant to Florida zoning ordinances "need not exhaust state administrative remedies before bringing such claims in federal court" (citation omitted) ). Defendants have not shown a court's application of DeCarlo to dismiss federal constitutional claims on the basis of failure to exhaust state administrative remedies.
Next, Defendants have not cited any authority for the proposition that DeCarlo may render a state law perjury claim-which is alleged in Count VII-subject to dismissal for failure to exhaust administrative remedies. (See generally Mot.; Reply). Moreover, Defendants have not made it clear Plaintiffs failed to exhaust their administrative remedies at all, as 3637 Corp. already took appeals to the PZAB and City Commission, and all that remains is its appeal to the state circuit court. (See id. 17). Defendants offer no authority whatsoever indicating Plaintiffs' administrative remedies remain unexhausted. (See generally id. ; Reply). Given Defendants' deficient briefing on the subject, the Court will not dismiss the Complaint on the basis Plaintiffs failed to exhaust their administrative remedies.
2. Claim Splitting
"In the alternative," Defendants request the Court dismiss the Complaint in its entirety "because it impermissibly splits causes of action." (Mot. 17). Defendants argue "[t]he state court appeal and the Complaint arise from the same factual background[ ] [a]nd most of the claims raised in the Complaint are being considered by the state court, or could have been raised [at] the proceedings." (Id. 18 (alterations added) ).
Plaintiffs disagree. Plaintiffs point out the state court proceeding is an appeal, which is limited to the record developed before the Miami City Commission, before the PZAB, and in the processing of the application for the Certificate of Use. (See Resp. 14). According to Plaintiffs, "[t]he Appellate division of the Circuit Court lacks jurisdiction to: 1) adjudicate a declaratory judgment action; 2) enter an injunction; and[ ] 3) award damages." (Id. (alterations added) ). Moreover, none of the claims in this case-aside from Counts III and IV, which are dismissed for lack of standing-are at issue in the state appellate proceedings because, as Plaintiffs argue, the claims "could not have been raised before the Miami City Commission." (Id. ). Again, Defendants do not respond to Plaintiffs' contentions in their Reply, and instead in a largely unhelpful manner merely "reiterate their points in the Motion to Dismiss as to why plaintiffs' claims, which largely mirror or repackage the claims raised in the state court appellate proceedings, should be dismissed for ... impermissibly splitting causes of action." (Reply 9 (alteration added) (citing Mot. 16-18) ).
"It is well settled that a plaintiff 'may not file duplicative complaints in order to expand their [sic] legal rights.' " Greene v. H & R Block E. Enters., Inc. , 727 F.Supp.2d 1363, 1367 (S.D. Fla. 2010)
*1334 (internal quotation marks and citation omitted). The Eleventh Circuit's prohibition on claim splitting "ensures that a plaintiff may not 'split up his demand and prosecute it by piecemeal, or present only a portion of the grounds upon which relief is sought, and leave the rest to be presented in a second suit, if the first fails.' " Id. (quoting Stark v. Starr , 94 U.S. 477, 485, 24 L.Ed. 276 (1876) ). "Claim-splitting has been analyzed as an aspect of res judicata or claim preclusion." Vanover v. NCO Fin. Servs., Inc. , 857 F.3d 833, 841 (11th Cir. 2017) (citations omitted). But, "[w]hile claim-splitting and res judicata both promote judicial economy and shield parties from vexatious and duplicative litigation, 'claim splitting is more concerned with the district court's comprehensive management of its docket, whereas res judicata focuses on protecting the finality of judgments.' " Id. (alteration added; internal quotation marks and citation omitted). Therefore, the appropriate inquiry for claim splitting "is not whether there is finality of judgment, but whether the first suit, assuming it were final, would preclude the second suit." Id. (internal quotation marks and citation omitted).
Defendants do not carry their burden to demonstrate dismissal on the basis of claim splitting is appropriate. While Defendants state in conclusory fashion "most of the claims raised in the Complaint are being considered by the state court, or could have been raised in that [sic] proceedings" (Mot. 18), they do not respond to Plaintiffs' assertion to the contrary, that all claims besides Counts III and IV-which are dismissed because Lucky's Arcade does not have standing-could not have been made in the state appellate proceedings because they could not have been raised before the Miami City Commission (see Resp. 14; see also Reply 9). Defendants fail to present the Court with authority addressing the concerns raised by Plaintiffs that the state court appeal is brought upon a limited factual record and the appellate division of the state circuit court lacks jurisdiction to award Plaintiffs the declaratory, injunctive, and financial relief they seek in this matter. (See Resp. 14; see also Reply 9). As Defendants have not rebutted these points or demonstrated they are inapposite to the claim-splitting inquiry, and have instead neglected to address them at all in their briefing, the Court declines Defendants' request to dismiss the entire Complaint on the basis of claim splitting.
3. Pullman Abstention
Defendants' next argument-that the Court should exercise Pullman abstention and decline to hear this case (see Mot. 18-20; Reply 7-8)-is more convincing.
"Pullman abstention is appropriate 'in cases presenting a federal constitutional issue which might be mooted or presented in a different posture by a state court determination of pertinent state law.' " Moheb, Inc. v. City of Miami , 756 F.Supp.2d 1370, 1372 (S.D. Fla. 2010) (quoting Abell v. Frank , 625 F.2d 653, 656-57 (5th Cir. 1980) ). "The rationale for the doctrine is that a federal court should 'avoid an unnecessary federal constitutional decision' " where a state's interpretation of its laws " 'may dispose of a case short of federal constitutional scrutiny.' " Id. (quoting BT Inv. Managers, Inc. v. Lewis , 559 F.2d 950, 953 (5th Cir. 1977) ). "The prerequisites for Pullman abstention are (1) there must be an unsettled issue of state law; and (2) there must be a possibility that the state law determination will moot or present in a different posture the federal constitutional questions raised." Id. at 1372-73 (citing Abell , 625 F.2d at 657 ).
According to Defendants, "many of the claims raised in the Complaint are duplicative of the issues currently being considered in Plaintiff 3637 Corp., Inc.'s appeal to the Miami-Dade County Circuit Court, *1335 Appellate Division." (Mot. 19 (citing id. , Ex. 3, Petition [ECF No. 13-3]; id. , Ex. 4, Response to Petition [ECF No. 13-4][2] ) ). Defendants note Count III of the Complaint is identical to a claim raised in the state court appeal. (See id. (citing Pet. 29-32; Resp. to Pet. 19-20) ). Defendants also contend 3637 Corp. "could have" raised the denial of procedural due process claims contained in Counts IX and X in the pending state court appeal, although it did not. (Id. ).[3] Defendants assert "[t]he issue of whether the City's denial of the certificate of use at issue was appropriately issued raises an unsettled issue of state law" and "no court has previously addressed or interpreted the zoning code sections at issue in the context of the facts presented" in 3637 Corp.'s application. (Id. 20 (alteration added) ). Defendants further argue "the state court's review of the pending appeal could moot all of the constitutional claims raised in the Complaint," because if 3637 Corp. is successful in the appeal, "the denial of the certificate of use would be voided and any potential constitutional claims stemming from that denial need not be addressed" by the Court. (Id. ).
In their Response, Plaintiffs give Defendants' arguments on this topic short shrift. Plaintiffs merely state, without elaborating, "[t]here are no unsettled issues of state law raised in the instant complaint, so there is no possibility that the state appellate proceedings could moot or change the posture of the questions presented herein, (except for Counts III and IV)." (Resp. 15 (alteration added) ).[4]
The Court agrees with Defendants that Pullman abstention is proper in this case. Contrary to Plaintiffs' insistence otherwise, an unsettled issue of state law exists here. 3637 Corp.'s Petition requests the state court find the City Commission wrongly interpreted the term "operator," because, among other reasons, "the City is flatly prohibited by Florida law from adding new language or requirements to a zoning condition." (Pet. 27). As "no court has previously addressed or interpreted the zoning code sections at issue" (Mot. 20), the state court case turns on whether Florida law does indeed, as 3637 Corp. asserts, prevent the City from denying the Certificate of Use on the basis 3637 Corp.'s change in ownership constituted a change in "operator" in violation of the 2009 Approval.
The second prerequisite for Pullman abstention, the "possibility that the state law determination will moot or present in a different posture the federal constitutional questions raised,"
*1336 Moheb, Inc. , 756 F.Supp.2d at 1372-73 (citation omitted), is also met. The Petition requests the state court "quash the Commission's decision and remand with instructions to grant the appeal and issue the requested certificate of use." (Pet. 35). Should the state court grant this request, "all of [3637 Corp.'s] allegations for why it has been harmed by the City[ ] ... are mooted" (Reply 8 (alterations added) ), as the harm suffered by 3637 Corp. stemming from each cause of action in the Complaint in some way traces back to 3637 Corp. being denied a Certificate of Use to operate a supper club (see generally Compl.). With both Pullman prerequisites met, the Court concludes abstention is the appropriate course of action.
This decision comports with a long line of "Eleventh Circuit case law establish[ing] a consistent pattern of abstaining under Pullman in cases involving constitutional challenges to zoning laws because such issues are local in nature and are better decided by state courts than by federal courts." Moheb, Inc. , 756 F.Supp.2d at 1373 (alteration added; citing cases). It is "particularly appropriate" to abstain where, as here, the pertinent state law issues are already being litigated in state court. Abell , 625 F.2d at 657.
While Defendants request the Court's abstention come in the form of a dismissal of the entire Complaint (see Mot. 20), Plaintiffs instead ask for a stay (see Resp. 14 n.6 (citation omitted) ). Plaintiffs have the better view. See, e.g. , Moheb, Inc. , 756 F.Supp.2d at 1373 ("Generally, a U.S. district court that abstains from reaching federal constitutional issues under Pullman will ... stay the federal issues pending determination of the state law questions in state court." (alteration added; citation omitted) ).
IV. CONCLUSION
For the foregoing reasons, it is
ORDERED AND ADJUDGED that the Motion [ECF No. 13] is GRANTED in part as follows:
1. Plaintiff, Lucky's Arcade, Inc., is DISMISSED for lack of standing.
2. Counts IV, V, and VI of Complaint [ECF No. 1] are DISMISSED .
3. The remaining causes of action are STAYED pending the outcome of 3637 Corp.'s appeal in state court.
4. The case is ADMINISTRATIVELY CLOSED , for statistical purposes only, without prejudice to the substantive rights of any of the parties.
5. The parties shall submit a joint status report describing the progress made in the state court action by July 2, 2018 , and shall file further status reports with the Court every 60 days thereafter.
6. Any pending motions are DENIED as moot.
DONE AND ORDERED in Miami, Florida, this 9th day of May, 2018.

The Court uses the pagination generated by the electronic CM/ECF database, which appears in the headers of all court filings.

The Court may properly consider the Petition and Response to Petition in its review of the Complaint's sufficiency, as the documents are central to Plaintiffs' claims (see, e.g. , Compl. ¶ 79), and Plaintiffs do not dispute their authenticity, see Day v. Taylor , 400 F.3d 1272, 1276 (11th Cir. 2005) ; see also U.S. ex rel. Osheroff v. Humana Inc. , 776 F.3d 805, 811-12 & n.4 (11th Cir. 2015) (the district court properly considered "the transcript of a hearing in another case involving a defendant clinic in state court" on a motion to dismiss because "[c]ourts may take judicial notice of publicly filed documents, such as those in state court litigation" (alteration added; citations omitted) ).

Defendants mistakenly make the same argument about Count VII and state it "contain[s] [a] claim[ ] of denial of procedural due process." (Mot. 19 (alterations added) ). Count VII concerns perjury by Cejas, not a procedural due process violation. (See Compl. ¶¶ 164-74).

Plaintiffs also emphasize, "Lucky's Arcade is not a party to the state appellate proceedings," and argue, "abstention in this action would wrongfully deprive Lucky's Arcade of any possibility of judicial relief from the actions of the City." (Resp. 15). As discussed, see supra Part III.A, Lucky's Arcade lacks standing in this action. Consequently, abstention is not the principle impacting the ability of Lucky's Arcade to obtain judicial relief.